VITTORIA PETERPAUL AND ANTONIO PETERPAUL, PLAINTIFFS-APPELLANTS, v. HARRY TORP, TRADING AS TORP'S EXPRESS, AND MIDDLESEX TRANSPORTATION COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Submitted February 17, 1939—Decided April 21, 1939.

For the plaintiffs-appellants, *Abe Press* (*Samuel Press,* of counsel).

For the defendant-respondent Harry Torp, *Herbert H. Meyer* (*Walter P. Reilly,* of counsel).

For the defendant-respondent Middlesex Transporation Company, *Kenneth Perry* (*John E. Toolan,* of counsel).

The opinion of the court was delivered by

WELLS, J.    This is an appeal from a judgment entered upon a verdict directed in favor of both defendants against the plaintiffs and from the refusal of the court to direct a verdict in favor of the plaintiffs against one of the defendants, Harry Torp, trading as Torp's Express.

The suit was for rent due under a lease and the renewals thereof covering a period of some six years.

The facts, as found from a record replete with numerous objections, none of which, however, were made grounds for appeal, present no contradiction as to what actually took place but only a problem as to the legal effects to be attached thereto.

On August 5th, 1929, one of the plaintiffs, Vittoria Peterpaul, was the owner of a garage located at 99 Pennington street, Newark, New Jersey.    Her husband, the other plaintiff, Antonio Peterpaul, was her agent in charge of this particular property.    On the day above mentioned these plaintiffs executed a lease for the premises with both of the defendants Harry Torp, trading as Torp's Express and the Middlesex Transportation Company.    The lease was to run for one year with rent at $100 a month and with the option of renewal for an additional year.    The lease also provided that a three months' notice should be given by the tenants to the landlords of their intention to terminate the lease at the end of the first year or to exercise the option of renewal.    About two and a half months before the termination of the first year under the lease, the plaintiffs negotiated with one of the tenants, Harry Torp, for an extension under the lease for another year at a reduced rental of $93 a month.    The Mid-

dlesex Transportation Company did not enter into these negotiations at all nor did it give the three months' notice provided for in the lease of its intention to terminate the lease at the end of the year. However, it did continue to use the premises, considering itself as a subtenant of Harry Torp.

The lease was extended year after year in a manner similar to the first extension. All negotiations were between the plaintiffs, as landlords, and Harry Torp, as tenant. The final extension was apparently agreed upon in August of 1933 for one year. The Middlesex Transportation Company considered itself during all this time as a subtenant and paid its rent to Harry Torp. The uncontradicted evidence shows that at no time until the commencement of this suit was there any demand made by these plaintiffs upon the Middlesex Transportation Company for back rent. All demands for such were made upon Harry Torp alone, as was distraint for back rent. Likewise, when the plaintiffs were asked by a judgment creditor, the mortgagee and the trustee in bankruptcy to give the names of the tenants of the garage, they gave only the name of Harry Torp. Thus the evidence stands uncontradicted that it was the intention of all concerned that Harry Torp should remain as the tenant and the Middlesex Transportation Company subtenant in all renewals or continuations under the original lease.

On May 11th, 1934, the Acorn Building and Loan Association (hereinafter called the Association) served notice upon the plaintiffs, as owners, and Harry Torp, as tenant, of the default in the mortgage held by it upon the premises in question. The notice also stated that the "said Association has and does hereby take possession of said lands and premises according to law." It then went on to forbid the plaintiffs to collect any further rent and directed the tenant and any persons holding possession under him not to pay the rent for said premises to any person except to the Association, or its duly authorized agent and to attorn to said Association and pay all further rent to it or its authorized agent.

In compliance with this notice and with the consent of the plaintiffs, the rent for the next five months, beginning with the month of May, was forwarded to the secretary of the

Association. The back rent admittedly due to the plaintiffs at the time of the service of the notice, was adjusted on August 22d, 1934, by an "account stated" between the plaintiffs and Harry Torp as a result of which Harry Torp gave the plaintiffs his promissory notes aggregating $225, which were later negotiated and payments of $175 made thereon. This suit is not based upon these notes.

In October of that year, the plaintiffs directed Harry Torp to pay them the rent from then on but he did not do so. The next month, Antonio Peterpaul filed a voluntary petition in bankruptcy and Harry Torp was directed to pay the trustee in bankruptcy the rent. The Association did not object to this latter arrangement.

After collecting the rent from January to June, 1935, the trustee in bankruptcy learned that the property was owned by Vittoria Peterpaul and not by her husband, Antonio Peterpaul, the bankrupt. The trustee thereupon ceased collecting the rents and turned over the money which he had collected to Vittoria Peterpaul. Upon being notified of the decision of the trustee that he had no longer any right to collect the rents, the Association in July, 1935, again notified Harry Torp to pay his rent thereafter to the Association.

By this time the Association had foreclosed its mortgage and purchased the property at foreclosure sale. However, the deed was not delivered to it until December 31st, 1935. Finally, the property was sold by the Association to Harry Torp on February 1st, 1936, and at that time the rent which had accrued subsequent to the notice served on May 11th, 1934, and had not been paid, was taken into consideration in determining the purchase price.

The original claim of the plaintiffs as set forth in their complaint and bill of particulars covered the period from August 5th, 1929, to December 31st, 1935, and amounted to $3,712. The plaintiffs retreated from this position so that at the conclusion of the trial and on this appeal, their claim is limited to the last three months in 1934, and the whole year of 1935, less a credit for the rent paid the trustee in bankruptcy for the first five months in 1935.

Whether the plaintiffs are entitled to the rent for this

shorter period presents a question which is purely legal. It was therefore within the jurisdiction of the trial judge to answer this question by ruling upon the various motions for directed verdicts. We will consider briefly whether his answer was in accordance with the law as found in this state.

The cases are legion which hold that upon the default in a mortgage, the mortgagee is entitled to possession and that the mortgagee may take actual possession, through peaceable means or by ejectment proceedings in a court of law, or constructive possession by the appointment of a rent receiver, or the attornment of a tenant in possession. *Sanderson* v. *Price,* 21 *N. J. L.* 637; *Hart* v. *Stockton,* 12 *Id.* 322; *Osborne* v. *Tunis,* 25 *Id.* 633; *Wade* v. *Miller,* 32 *Id.* 296; *Shields* v. *Lozear,* 43 *Id.* 496; *Kircher* v. *Schalk,* 39 *Id.* 335; *Woodside* v. *Adams,* 40 *Id.* 417; *Jersey City* v. *Kiernan,* 50 *Id.* 246; *Devlin* v. *Collier,* 53 *Id.* 422; *Price* v. *Armstrong,* 14 *N. J. Eq.* 41; *Stewart* v. *Fairchild,* 91 *Id.* 86; *Bermes* v. *Kelley,* 108 *Id.* 289; *New York Trust Co.* v. *Shelburne,* 110 *Id.* 187; *Hands* v. *Russell,* 115 *Id.* 55; see, also, *R. S.* 46:8-1.

In the case of constructive possession, some overt act, such as the payment of rent by the tenant to the receiver of the mortgagee is necessary before the mortgagee is deemed to have taken possession. Since the consent of the mortgagor to such proceedings is unnecessary it has been argued that the word "attornment," having lost this common law requirement, is a misnomer when applied to this transfer by the tenant from the mortgagor to the mortgagee. (See series of four articles entitled "The Place of Attornment in the Modern N. J. Law of Mortgages," in 60 *N. J. L. J.* 137, 145, 153 and 161 for interesting discussion of this problem.)

Be this as it may, the attornment by Harry Torp to the Association, made effective by the actual payment of rent, was a matter exclusively between them. It arose from the right of the Association to evict Harry Torp and the desire of Harry Torp to continue as a tenant. *Del-New Co.* v. *James (Supreme Court,* 1933), 111 *N. J. L.* 157. In many respects it was a new tenancy made between the two. The attempt by the plaintiffs to interfere with this new tenancy

by serving notice on Harry Torp in October of 1934 to pay the rent to them was therefore of no effect whatsoever. The default in the mortgage still continued and with it the rights of the Association to possession and to the fruits of possession, *i. e.,* the rent. There is no evidence that the Association ever relinquished its rights.

Upon the sale of the property by the Association to Harry Torp the back rent as adjusted was included in the purchase price.

This court said in *Hinck* v. *Cohn*, 86 *N. J. L.* 615:

"As soon as the tenant had rightfully attorned to and paid the mortgagee, the right of the mortgagor to collect the rent ceased. Of course the reason is that if the tenant rightfully attorned to the mortgagee, it amounted to an eviction by paramount title. Since the mortgagor is the plaintiff suing for the rent, he must recover by his own right, and not by the weakness of the claim of the purchaser at the sheriff's sale. If the mortgagor had no right to collect the rent, it makes no difference whether the tenant paid it to the right person or not, or whether his pleadings set up a payment to the right person or not."

Likewise it was held in *Del-New Co.* v. *James, supra,* that when a mortgagor sues a tenant for rent which has accrued subsequent to the attornment by the tenant to the mortgagee and has been paid to the mortgagee prior to the institution of suit, such attornment constitutes a bar to recovery.

We are of the opinion that the trial court properly directed verdicts in favor of the defendants and against the plaintiffs. The judgments entered upon these verdicts are therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 15.

*For reversal*—None.