RIMM, J.T.C.
This is a local property tax matter in which defendant municipality challenges the standing of plaintiff to bring the suit. The municipality states that plaintiff is not a taxpayer under the applicable statute, N.J.S.A. 54:3-21, but is only a mortgagee.
The subject property is a Howard Johnson hotel containing 208 rooms on approximately 12.9 acres of land. The address is 539 Absecon Boulevard, Absecon, New Jersey, and the property is designated as Block 225, Lots 9 and 10 on the tax map of defendant municipality. The year in contest is 1991, for which year the assessment on Lot 9 was as follows:
Land $ 166,300
Improvements 7,750,500
Total $7,916,800.
The assessment on Lot 10 was as follows:
Land $111,000
Improvements -0-
Total $111,000.
Plaintiff filed a direct appeal with the Tax Court on August 13, 1991 seeking a reduction in the total assessments for the two lots. Defendant then moved to dismiss the complaint on the ground that plaintiff is not a taxpayer within the meaning of N.J.S.A. 54:3-21 which at the time provided in pertinent part as follows:
A taxpayer feeling aggrieved by the assessed valuation of his property, ... may on or before August 15 file a complaint directly with the Tax Court, if the assessed *4 valuation of the property subject to the appeal exceeds $750,000.00____[1]
In making its argument, the municipality relies on Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 525 A.2d 323 (1987). In that case, the Supreme Court quoted the Appellate Division with approval:
“[I]t may well be that the taxing authority looks only to the landlord for payment, but, as a matter of economic reality, the ultimate payment obligation is the tenant’s and is fully enforceable as such by the landlord. To conclude that the tenant is not the taxpayer is incorrect and contrary to common practice and business usage.” [Id. at 631, 525 A.2d 323 (quoting 206 N.J.Super. 597 at 602, 503 A.2d 370)]
Based on this statement, the municipality argues that the “ultimate payment obligation” is not that of the mortgagee; and that there is no “common practice and business usage” by which a mortgagee pays taxes on behalf of a mortgagor.
The bank’s interest as mortgagee was created by a mortgage and security agreement dated November 12,1985 by and between Marina Vista Associates, L.P., a limited partnership of the State of New Jersey, as mortgagor, the record title holder at the time of the filing of the complaint, and Marine National Bank as mortgagee. The mortgage was recorded on November 15, 1985 in the office of the clerk of Atlantic County in mortgage book 3251, page 48. The bank’s mortgage was a first mortgage by reason of a postponement of a mortgage agreement also duly recorded in the office of the clerk of Atlantic County. Plaintiff bank is a successor to the interest of Marine National Bank under the mortgage because effective January 3,1989 Marine National Bank became a part of, and became known as, Chemical Bank.
On May 7, 1990, after payment default by mortgagor and the maturing of the mortgage and the note which it secured, the bank filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, Atlantic County. On May 7, 1991, a final judgment was entered in the foreclosure action. The foreclosure judgment was in the amount of $11,780,733.94. The judgment included $181,536.33 for past due 1990 real estate taxes and for *5 first quarter 1991 real estate taxes paid by the bank on April 15, 1991. The final judgment ordered the property sold to satisfy the bank’s mortgage and other mortgages on the property. The final judgment also provided that the bank, or any purchaser at a foreclosure sale, recover possession of the premises and that a writ of possession may issue. On May 13, 1991, a writ of execution was issued to the sheriff of Atlantic County directing him to proceed with sale of the property. A sale was scheduled on July 25, 1991 and adjourned until September 19, 1991. The bank was the successful bidder at the sale, and it assigned its bid to a wholly-owned subsidiary. The sheriff of Atlantic County delivered his deed dated October 3, 1991 to Shoreline Holding Corporation, the wholly-owned subsidiary of the bank.
During the pendency of the foreclosure action, the City of Absecon filed a verified complaint in the Superior Court of New Jersey, Chancery Division, Atlantic County, seeking the appointment of a receiver of rents and income of the property pursuant to N.J.S.A. 54:4-123. The municipality named two parties as defendants in the matter. One was Marina Vista Associates, L.P., the property owner. The other was Chemical Bank, New Jersey, a National Association (formerly Marine National Bank), the mortgagee of the property and now plaintiff in the presently pending local property tax assessment matter.
The statute provides that “[t]he court may proceed in the action in a summary manner;” and the verified complaint was accompanied by an application for an order to show cause requiring defendants to show cause why the tax collector of Absecon should not be appointed a receiver of rents and income for the subject property for the purpose of collecting and satisfying out of such rents and income the delinquent taxes assessed against the property. The proposed order to show cause also sought the entry of an order by the court authorizing the tax collector, if appointed receiver, to designate Chemical Bank as the receiver’s agent to collect the rents and income from the property and to manage the property, if the bank was willing to do so. The order was signed *6 on November 5,1990, but a hearing was adjourned on the basis of another order entered on December 7,1990, giving the municipality leave to amend its complaint to add H.J. Absecon Management Co., Inc., the company managing the property, as a party defendant.
At the same time, H.J. Absecon Management Co., Inc. was ordered to pay to the city $150,000 on account of taxes owed by the property owner. The order further provided that H.J. Absecon Management Co., Inc. would continue to manage the subject property as it had previously been doing prior to the institution of the city’s suit for the appointment of a receiver and prior to the institution of the bank’s suit to foreclose its mortgage. Thereafter, a hearing on the order to show cause was again adjourned as a result of an order entered by the court on January 9, 1991, reciting that H.J. Absecon Management Co., Inc. had, in fact, paid $250,000 to the city on behalf of the owner to be applied to the 1990 tax obligation.
In addition, the order provided that the owner shall pay to the city the additional sum of $102,881.88 to be applied to the 1990 tax obligation. The order directed the management company to reimburse the bank the sum of $102,831.88 from “the excess cash flow of the property.” A hearing on the order to show cause was yet again adjourned based on another order of the court dated April 10, 1991, directing the owner to pay the sum of $74,094.97 to the city to be applied to the 1991 taxes. This order also provided that the manager shall, in addition to other payments previously permitted by the court, be authorized to reimburse the bank for the sum of $74,094.97 from the excess cash flow of the property. Ultimately, the city’s suit was dismissed by stipulation without any hearing ever having been held on the order to show cause, the city having received a total of $426,926.85 in taxes during the pendency of its suit.[2]
*7 In fact, plaintiff paid the $102,831.88 to be applied to the 1990 taxes in accordance with the order of January 9, 1991 entered in the receivership matter. Plaintiff was not reimbursed for this amount as directed by the same order, and it included this amount in its affidavit of amount due in the foreclosure action.
Plaintiff also paid the sum of $78,704.45 for the first-quarter 1991 taxes on or about April 15,1991. This payment was made in accordance with the order of April 19, 1991 in the receivership matter requiring the owner to pay $74,094.97 for 1991 taxes. Plaintiff was not reimbursed for this amount as directed by the same order, and it included this amount in its affidavit of amount due in the foreclosure action. The two payments made by plaintiff total $181,536.33, the actual amount in the affidavit of amount due.
In addition, plaintiff paid the second quarter 1991 taxes in the amount of $64,081.91 on or about August 1, 1991. This amount was not included in the foreclosure judgment.
The third quarter 1991 taxes were paid by the management company in the amount of $71,066.11 from operating funds. Since title to the property had been obtained by plaintiff by the time this payment was made, plaintiff has agreed to credit this amount against any claim it may have against the guarantors of the loan. The fourth-quarter 1991 taxes were paid by plaintiff on or about November 5, 1991.
Finally, plaintiff also paid the sum of $255,839.52 on or about August 1, 1991 to satisfy a 1989 tax lien on the properties.
Based on these facts, and countering the argument of the municipality, plaintiff also relies on Village Supermarkets, Inc. v. West Orange Tp., supra. It argues that the Supreme Court, in that opinion, ruled that the right to challenge a local property tax assessment is not limited to a property owner who pays taxes, but is also available to, in plaintiffs words, “non-owner, indirect taxpayers with a sufficient economic interest in the real property and assessment.”
One case states that a mortgagee does not have such standing. Monmouth Beach Bor. v. Winfield, 55 N.J.L.J. 71 (State Bd. of *8 Tax. &. Assess.1931). In that case, the state board held that the word “taxpayer” in the predecessor statute to N.J.S.A 54:3-21, and the source of the current statute, meant “owner.” Accordingly, the mortgagee had no standing. That case is not, of course, binding on this court; but more significantly, our Supreme Court has held that the word “taxpayer” in N.J.S.A 54:3-21, does not mean only an “owner.” It is therefore necessary to determine if plaintiff mortgagee possesses “a sufficient ownership of the assessed property so that ... [it] is ‘also characterizable as a taxpayer and the property is also [its] for purposes of the statute.’ ” Village Supermarkets, Inc. v. West Orange Tp., supra, 106 N.J. at 631, 525 A.2d 323.
A mortgage is essentially security for the payment of a debt. Feldman v. Urban Commercial, Inc., 64 N.J.Super. 364, 165 A.2d 854 (Ch.Div.1960). A mortgage must be in writing as a conveyance of an interest in land. N.J.S.A 25:1-5(d); Feldman v. Warshawsky, 125 N.J.Eq. 19, 4 A.2d 84 (E. & A.1938). In New Jersey, the common law rule is that a mortgage creates an immediate estate in fee simple in the mortgagee subject to defeasance by the payment of the mortgage debt according to the terms of the mortgage. However, the right to possession is postponed until default. Boteler v. LeBer 112 N.J.Eq. 441, 164 A. 572 (Ch.1993). The attitude of our courts is that, while in law a mortgage conveys a legal title to the property encumbered, Jaffe v. Zilinski, 14 N.J. 24, 29, 100 A.2d 887 (1953), in equity a lien on the land is created by a mortgage. Rosenblatt v. Premier Dyeing Co., 101 N.J.Eq. 569, 139 A. 389 (Ch.1927). In reality, New Jersey is an “intermediate” state, and while the mortgagor has the right of possession of the mortgage property until a default in the mortgage obligation, upon such default, the mortgagee is entitled to the possession of the mortgaged premises, which he may acquire either by taking possession of the premises peaceably and publicly, Cohn v. Plass, 85 N.J.Eq. 153, 95 A. 1011 (E. & A.1915), or by instituting an action for possession of the land, Feldman v. Urban Commercial Inc., supra. “Upon default a mortgagee is entitled to possession without first barring the equity of redemption by foreclosure.” Dorman v. Fisher, 31 N.J. 13, 155 A.2d 11 *9 (1959). Actually, such an action for possession of land is now generally incorporated in a foreclosure complaint by a separate count for possession.
A mortgagee also has a cause of action against a person damaging the mortgaged premises, and he may bring an action for such damages. Garrow v. Brooks, 123 N.J.Eq. 138, 196 A. 460 (Ch.1938). This is so because the mortgagee has the right to take such steps as are necessary to protect its security.
In Peterpaul v. Torp, 122 N.J.L. 476, 5 A.2d 779 (E. & A.1939), the former owner of a mortgaged premises who lost the premises as a result of a foreclosure action sued a former tenant for rent. In denying plaintiff the right to rent, the Court of Errors and Appeals said:
The cases are legion which hold that upon a default in a mortgage, the mortgagee is entitled to possession and that the mortgagee may take actual possession, through peacable means or by ejectment proceedings in a court of law, or constructive possession by the appointment of a rent receiver, or the attornment of a tenant in possession.
[Id. at 480, 5 A.2d 779; citations omitted.]
In the face of an attempt by the owner to interfere with the landlord-tenant relationship between the mortgagee and the tenant, the court said that the property owner had no right to the rent because
“[t]he default in the mortgage still continued and with it the rights of the [mortgagee] ... to possession and to the fruits of possession, Le., the rent____ ‘As soon as the tenant had rightfully attorned to and paid the mortgagee, the right of the mortgagor to collect the rent ceased. Of course, the reason is that if the tenant rightfully attorned to the mortgagee, that amounted to an eviction by paramount title.’ ”
[Id. at 480, 481, 5 A.2d 779; emphasis added (quoting Hinck v. Cohn, 86 N.J.L. 615, 617, 92 A. 378 (E. & A.1914)).]
Our Supreme Court has also held that “a mortgage debt, although a chose in action, is yet, where the subject of the security is land, ‘an interest in land,’ and priorities are governed by the rules applicable to interests in land, and not by the rules which govern interests in personalty.” Burke v. Hoffman, 28 N.J. 467, 475, 147 A.2d 44 (1958).
*10 In addition to the mortgagee’s interest in the property in accordance with the common law, the subject mortgage contains provisions in it which are relevant to the issue presently before the court. Among others, these provisions are:
5. Taxes and other Charges: Mortgagor shall pay when due and payable and before interest or penalties are due thereon, all taxes, assessments, water and sewer rents and all other charges or claims which may be assessed, levied, or filed at any time against Mortgagor, the Mortgaged Property or any part thereof or against the interest of Mortgagee therein, or which by any present or future law may have priority over the indebtedness secured hereby either in lien or in distribution out of the proceeds of any judicial sale; and Mortgagor shall produce to Mortgagee not later than such dates receipts for the payment thereof; ____
12. Right to Remedy Defaults: In the event that Mortgagor should fail to pay taxes, assessments, water and sewer charges or other lienable claims ... or insurance premiums, or fail to make necessary repairs, or permit waste, or otherwise fail to comply with its obligations hereunder ..., then Mortgagee, at its election and upon ten (10) days’ prior written notice to Mortgagor, shall have the right, but not the obligation, to make any payment or expenditure which Mortgagor should have made, or which Mortgagee deems advisable to protect the security of this Mortgage or the Mortgaged Property, without prejudice to any of the Mortgagee’s rights or remedies available hereunder or otherwise, at law or in equity____
13. Events of Default: Any one or more of the following shall constitute an Event of Default hereunder:
(a) Failure of Mortgagor to pay any installment of principal or interest, or any other sum due under the Note or this Mortgage within fifteen (15) days after the same is due; ----
14. Remedies:
(a) Upon the happening of any Event of Default, the entire unpaid balance of principal, accrued interest and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without further notice or demand.
(b) When the entire indebtedness shall become due and payable, either because of maturity or because of the occurrence of any Event of Default, or otherwise, then forthwith: ...
(ii) Possession: Mortgagee may enter into possession of the Mortgaged Property, with or without legal action, and by force if necessary, or, in the alternative, Mortgagee shall be entitled as of right to appointment of a receiver without regard to the solvency of Mortgagor or any other person liable for the debt secured hereby, and regardless of whether Mortgagee has an adequate remedy at law: either Mortgagee or said receiver, as the case may be, may rent the Mortgaged property, or any part thereof, in its own name or in the name of Mortgagor for such term or terms and on such other terms and conditions as Mortgagee or such receiver may see fit, collect all rentals (which term “rentals” shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to the payment of taxes, water and *11 sewer rents, other lienable charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Property, or in reduction of the principal or interest, or both, hereby secured, in such order and amounts as Mortgagee or said receiver may elect; and for that purpose Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any existing or future lease or leases or rights to use and occupation of the Mortgaged Property, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals. Any lease or leases entered into by Mortgagee or said receiver pursuant to this paragraph shall survive foreclosure of the Mortgage and/or repayment of the debt, except to the extent any applicable lease may provide otherwise.
Based on these provisions, the mortgagee has a substantial interest in the property, and it has many of the attributes of an owner upon the happening of any event of default. It has the right to make any payment or expenditure it deems advisable to protect the security of the mortgage. It may pay taxes, assessments, water and sewer charges or other lienable claims or insurance premiums. It may repair, maintain and avoid waste to the premises, and it may enter into possession of and rent the premises. Upon default, the mortgagee has such an interest in the property by which “common practice and business usage” would permit, if not require, the mortgagee to pay real estate taxes. Under such circumstances, there is no justifiable reason for prohibiting a mortgagee, whose mortgage is in default, who has paid the real estate taxes, and who seeks to protect its security, from pursuing an appeal of the local property tax assessment on the mortgaged premises.
In accordance with the common law and the mortgage instrument, the mortgagee in this case, holding a mortgage in default and having paid taxes, possesses “a sufficient ownership of the assessed property” so that it may be characterized as a taxpayer and the property may be considered its property for purposes of N.J.S.A 54:3-21. Recognition of the mortgagee’s right to challenge the assessment “reflects the reality of present commercial practice.” Village Supermarkets, Inc., supra, 106 N.J. at 635, 525 A.2d 323.
In Collective Federal Savings and Loan Assn. v. Toland, 207 N.J.Super. 157, 504 A.2d 59 (Ch.Div.1985), a mortgagee was *12 allowed attorney’s fees under R. 4:42—9(a)(4) after the institution of a foreclosure action even though the mortgage was paid in full before a judgment. In referring generally to the rule, the court said that the rule made eminent good sense in the marketplace. “It encourages the making of mortgage loans and permits New Jersey borrowers to compete more effectively for mortgage funds, even from out-of-state lenders, because lenders know they will recover all or part of their attorneys fees if forced to foreclose a mortgage.” Id. at 161, 162, 504 A.2d 59. Permitting a mortgagee, whose mortgage is in default and who has paid real estate taxes, to challenge a local property tax assessment “makes eminent good sense in the marketplace.” A lender will know that it will be able to protect its security by challenging a local property tax assessment involving a property in which it has a substantial interest, even in the absence of the owner’s challenge of the assessment, and that it will receive a reduction in the assessment if it can prove that the assessment is too high.
Northfield v. Zell, 12 N.J.Tax 180 (Tax 1991), reaches a different result for the purchaser of a tax sale certificate. The result is based on the court’s interpretation of the limited rights conferred on such a purchaser by statute and the fact that there is no privity between a property owner and the holder of a tax sale certificate. The court said that a purchaser’s rights are strictly statutory and that the statute confers no right to bring an action to challenge the assessment which is the basis for the calculation and payment of the taxes. A mortgagee’s interest in a property significantly transcends that of a tax lien certificate holder by virtue of both the common law interests created in favor of the mortgagee and the contract interests created by the mortgage. In addition, N.J.S.A 54:3-27.1 recognizes the interest of the mortgagee in the property and the need to protect a mortgagee which pays taxes on a mortgaged premises. This statute provides as follows:
Payment of taxes by mortgagee: Whenever a mortgagee shall pay any taxes on the mortgaged premises and give notice to the collector of taxes at the time of such payment that payment is being made of such taxes as mortgagee, and an appeal from the assessment placed or the taxes levied on such property is taken or is *13 pending and a reduction in the assessment or the taxes levied is obtained by such an appeal, the collector of taxes shall credit any remission of taxes arising out of such appeal to the taxes next levied upon such premises, or the taxes due or to become due in the year the judgment is issued on such appeal.
In reality, this statute recognizes that a mortgagee may indeed be a taxpayer.
There is also no reason to believe that the mortgagee will not adequately represent the owner’s interest nor that it does not have the ability to mount and prosecute an effective appeal.[3] These are two of the factors the Supreme Court said should be considered in resolving the question of whether a non-owner should be permitted to prosecute a tax appeal. Village Supermarkets, Inc., supra, 106 N.J. at 634, 525 A.2d 323.
Further, in the event of any dispute among the interested parties as to the disposition of tax dollars in the event of a change in the assessment one way or another as a result of this litigation, I can enter an appropriate order which would protect the rights of all such parties. Freehold Office Park, Ltd., v. Tp. of Freehold, 12 N.J.Tax 433 (Tax 1992). “The tax court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined.” N.J.S.A. 2A:3A-4. In this regard, it should be noted that the Supreme Court in Village Supermarkets, Inc. was concerned about “notice to the owner” in the event of an appeal by a tenant. The court’s concern was codified in R. 8:5— 3(a)(8). The rule requires a tenant, who files a complaint to contest a local property tax assessment, to serve a copy of the complaint on the record owner of the property. Technically, the rule does not apply to this case, but the notice requirement of Village Supermarkets, Inc. clearly does. Plaintiff complied with this notice requirement by sending a copy of the complaint to Marina Vista Associates, L.P., the property owner, on August 26, *14 1991. No motion to intervene, nor for any other relief, has been filed by the property owner.
The motion for summary judgment is denied. The matter will proceed to trial. Counsel for plaintiff will submit an appropriate order.

The filing date was changed to April 1 by L.1991, c. 75.

 This is the amount provided for in the various orders. Actually, the city may have received a total of $431,536.33 because of the mortgagee’s actual payment of $78,704.45 for the first quarter 1991 taxes. See infra.

 At the time of the commencement of this action, plaintiff was still the mortgagee.