206 N.J. Super. 597 (1986)
503 A.2d 370
VILLAGE SUPERMARKETS, INC., PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF WEST ORANGE, DEFENDANT-RESPONDENT.
CENTRE PROPERTIES CO., PLAINTIFF,
v.
TOWNSHIP OF WEST ORANGE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1985.
Decided January 9, 1986.
*599 Before Judges PRESSLER, DREIER and GRUCCIO.
Lawrence S. Berger argued the cause for appellant (Lawrence S. Berger, attorney; Bruce D. Nimensky, on the brief).
Matthew J. Scola argued the cause for respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Village Supermarkets, Inc. appeals from the dismissal by the Tax Court of its consolidated complaints by which it challenged a 1979, 1980 and 1981 real property tax assessment of the defendant Township of Orange. The primary question raised by this appeal is whether a so-called net lessee, who is contractually obligated to assume the full tax burden for the property, is a "taxpayer" within the intendment of N.J.S.A. 54:3-21 and therefore entitled to prosecute an appeal from the assessment.
The controversy involves a multi-tenanted shopping center consisting of several buildings constructed on property which is assessed as a single parcel. Although the assessor's property record card shows a separate valuation for each building, the actual assessment has a single "buildings" component and the tax bill is so issued. Plaintiff is the tenant, under a 50-year *600 lease,[1] of one of the buildings in which it operates a Shop-Rite supermarket. The property was owned during the tax years here in question by Centre Properties Company, which transferred title to Mutual of New York during the pendency of the litigation. Plaintiff's lease requires it to pay a proportionate share of the real estate taxes assessed against the property, calculated as follows:
(a) An amount equal to the real estate tax attributable to the assessed valuation of the building and improvements to be erected by the Tenant, plus,
(b) An amount equal to the real estate tax attributable to the assessed valuation of the demised land without the building, plus,
(c) An amount equal to the real estate taxes assessed against the Shopping Center for the land and improvements, exclusive of the land and buildings occupied by Tenants, and multiplied by a fraction the numerator of which is the square footage of the floor area of the Tenant's building, and the denominator of which is the total square footage of the floor area of all stores in the Shopping Center determined as of the commencement of the lease year.
It appears that all other shopping center tenants are also obliged by their respective leases to pay a proportionate share of real estate taxes. The owner, although remaining primarily liable to the taxing authority, is thus fully and effectively relieved of the actual obligation for the local tax burden.
Plaintiff appealed to the Essex County Board of Taxation from both the 1979 and 1980 assessments. Each appeal was filed in its own name and each sought relief from the total assessment of $5,077,800, consisting of a land assessment of $1,344,000 and a building assessment of $3,733,800. Each appeal was dismissed by the County Board without prejudice and each order of dismissal noted the owner's objection to the petition of appeal and plaintiff's lack of status as a taxpayer within the meaning of N.J.S.A. 54:3-21. Plaintiff filed a complaint in the Tax Court on December 10, 1979 in respect of the 1979 assessment and another on November 6, 1980 in respect of the 1980 assessment. On July 24, 1981, this time in the name of Centre Properties, it filed a direct appeal with the Tax Court *601 from the 1981 assessment, which was the same as the prior years. Centre Properties then filed a motion in the action seeking leave to intervene in order to apply for consolidation of all three complaints and for their dismissal. The actions were consolidated and the appeals dismissed for lack of jurisdiction.
The Tax Court, in its opinion reported at 6 N.J. Tax 481 (Tax Ct. 1984), concluded that there were two impediments to its exercise of jurisdiction. The first was plaintiff's status as tenant rather than owner, and the second was plaintiff's tenancy of only a portion of a singly assessed parcel. While we recognize the complicating consequences of a partial tenancy, we nevertheless are satisfied that neither of these circumstances deprives the Tax Court of jurisdiction to entertain plaintiff's appeal.
For analytical purposes, we consider the first of these issues in the context of a single tenant occupancy. As to the right of a net lessee to bring the action at all, we start from the same statutory point as the Tax Court judge did, namely, N.J.S.A. 54:3-21. That statute provides in pertinent part that an appeal from a real property assessment may be brought by "[a] taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county...." The Tax Court judge was of the view that a net lessee, obligated by his lease to pay the taxes, is not the taxpayer since the owner, not he, is the person directly chargeable by the taxing authority with the payment obligation and since the property is not his, but rather the legal owner's.
We are satisfied that in the context of modern commercial realty this construction of the statute is too narrow. While it is true that as a matter of ordinary usage the term "taxpayer" refers to the person directly responsible to the taxing authority, we see no legal justification for limiting its meaning to that person. To the contrary, there are compelling reasons to encompass the net lessee within the definitional embrace.
*602 To begin with, we cannot ignore facts which are the operating predicates of the commercial community. Among these facts is the customary use of the net-lease technique by which the owner passes on to his commercial tenant the entire tax obligation. It may well be that the taxing authority looks only to the landlord for payment but, as a matter of economic reality, the ultimate payment obligation is the tenant's and is fully enforceable as such by the landlord. To conclude that the tenant is not the taxpayer is incorrect and contrary to common practice and business usage. To conclude that the leased property is not the tenant's is similarly unrealistic and contravenes ancient real property principles recognizing the nature, character and extent of the tenant's interest, and particularly that of the long-term tenant. In short, the lease conferring a right of exclusive possession upon the tenant constitutes, both contractually and by law, a transfer to the tenant of a separate, distinct and cognizable estate which is separately and independently protectible. See, e.g., Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704, 707 (E. & A. 1948); Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 600 (App.Div. 1955); Ringwood Assocs., Ltd. v. Jack's of Route 23, 153 N.J. Super. 294, 305 (Law Div. 1977), aff'd, 166 N.J. Super. 36 (App.Div. 1979). We are therefore satisfied that when the tenant is obligated by the lease to pay the real property tax as a condition of maintaining the leasehold estate, he is also characterizable as a taxpayer and the property is also his for purposes of the statute.
There are evident policy reasons for this conclusion. When the owner has transferred the full tax obligation to the tenant, he has effectively transferred the incentive to challenge the correctness of the assessment. Since the owner is not ultimately going to pay the tax, he is typically unconcerned with its amount and has little motive to expend the time, money, and energy required for an appeal. If the Tax Court were right, therefore, the assessment, however incorrect and unfair, would go unchallenged since the tenant, who is primarily interested in the assessment, would have no standing to challenge it and the *603 landlord, who is essentially unconcerned with it, has no motive to challenge it. We are satisfied that this consequence is untenable. The right to appeal an assessment is, in our view, not only a critical right of the person obligated to pay the tax but is also an essential element in maintaining assessment practices which are fair and thoughtful overall. We cannot, therefore, countenance a rule of law, compelled neither by statute nor judicial authority, which effectively insulates large numbers of assessments from the appeal process and which contravenes long-standing principles respecting the substantive and procedural rights of real parties in interest. See R. 4:26-1.
We note, moreover, that while there is apparently no reported opinion in this State analytically addressing the question of the net lessee's status as a taxpayer, the Tax Court in at least two reported decisions has assumed that status by entertaining appeals brought by the net lessee in its own name without any discussion of the problem.[*]See Willingboro Chrysler/Plymouth v. Edgewater Park Tp., 6 N.J. Tax 168 (Tax Ct. 1983); RCA Corp. v. East Windsor Tp., 1 N.J. Tax 481 (Tax Ct. 1980). And see Jersey City v. Armed Realty Corp., 45 N.J. Super. 49 (App.Div. 1957). We are aware of the contrary dictum in Auditorium Pier Co. v. Atlantic City, 74 N.J.L. 303 (Sup.Ct. 1907), on which the Tax Court relied here. That case held only that since a net lessee was not entitled to an owner's notice of tax levy, it had no standing to contest the levy on the ground of not having received the notice. To the extent, if any, that Auditorium Pier Co. would deny taxpayer status to a tenant in respect of an assessment appeal, we decline to follow it since we believe that the evolution in commercial practices over the last 75 years requires a different result now.
*604 We further point out that other states construing analogous tax-appeal legislation have routinely accorded standing to challenge the assessment to lessees contractually obliged to pay the taxes. See Riso v. Pottawattamie Bd. of Review, 362 N.W.2d 513, 515 (Iowa 1985) (lessees are within the statutory class of "aggrieved taxpayers"); In re Property in Forsyth County, 282 N.C. 71, 191 S.E.2d 692, 696 (1972) (lessees are within the statutory class of "any and all taxpayers who own or control taxable property"); Ames Dept. Stores v. Assessor, 102 A.D.2d 9, 476 N.Y.S.2d 222, 224 (App.Div. 1984) (lessees are within the statutory class of "aggrieved persons"); In re Appeal of Marple Newtown School District, 70 Pa.Commw. 365, 453 A.2d 68, 69 (Commw.Ct. 1982) (lessees are within the statutory class of "any person aggrieved"); Rolling Hills Country Club v. Bd. of Tax Review, 168 Conn. 466, 363 A.2d 61, 63 (1975) (lessees are within the statutory class of "any person aggrieved"). The only contrary authority our research has disclosed is an earlier Pennsylvania holding, ignored by Marple Newtown, supra, and an earlier Connecticut holding, ignored by Rolling Hills, supra. See, respectively, Marcus Hook Development Park v. Board, 68 Pa.Commw. 229, 449 A.2d 70 (Commw.Ct. 1982); Lerner Shops of Connecticut v. Town of Waterbury, 151 Conn. 79, 193 A.2d 472 (1963).
The Tax Court recognized that despite the constraints it believed to be imposed by the statute, the contracting parties are nevertheless free to provide by agreement that the tenant may prosecute the appeal as the landlord's agent. There was no such lease provision or collateral agreement here, and the court concluded that any such covenant was required to be express, or at least inferable from the terms of the lease, rather than implied. The court thus rejected as irrelevant an affidavit of plaintiff's president asserting that he had negotiated the lease and had assumed that plaintiff had the authority to appeal.
*605 If, as we believe, the net lessee has independent status as a taxpayer to appeal the assessment, the express consent of the landlord by way of designating the tenant as his agent for that purpose is a wholly superfluous consideration. Even were that consent necessary, however, we would conclude as an alternative ratio decidendi that unless the tenant's right to prosecute the appeal is expressly withheld, it is implied as a necessary corollary of and ancillary to the tenant's undertaking to assume the full tax burden. We are satisfied that the commercial imperative of the net tenant's right to appeal the assessment invokes the well-settled principle that unexpressed contractual terms necessary to give business efficacy to an agreement constitute constituent elements thereof which may be provided by implication. New Jersey Bank v. Palladino, 77 N.J. 33, 46 (1978); Marini v. Ireland, 56 N.J. 130, 143 (1970). And see generally Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 182 (1981); Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130 (1965); Newark Publishers' Assn. v. Newark Typographical Union, 22 N.J. 419, 426-427 (1956).
We recognize, as did the Tax Court, that despite his shift to the tenant of the tax obligation, the landlord nevertheless retains an interest in the fair assessment of his property. And, despite the shift of the payment obligation, he may have a legitimate interest in avoiding the possible consequence, on a tenant's appeal, of an increase in the assessment. See, e.g., F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 427-431 (1985). Because, however, the net-lessee's interest is more immediate and certainly of a significantly greater magnitude, we are satisfied that the landlord's interest, to the extent it might conflict with the tenant's or be prejudiced by the tenant's assertion of its interest, can be fully protected by *606 requiring that the landlord receive notice of the tenant's action and that it be permitted to intervene therein.[2]
The next question before us is whether the net-lessee's right to appeal the assessment is affected by reason of the fact that the singly assessed property is multi-tenanted. In considering this question, we reject plaintiff's suggestion that each of the tenants may appeal that portion of the assessment attributable to its own leasehold. We agree with the Tax Court judge that such fractionalization of a single assessment would be inconsistent with assessment principle and practice. See In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 33-34 (1961). We are aware of the parties' representation to the Tax Court that the assessor has accommodated their mutual interest in ascertaining the tenant's share of the overall tax burden by allocating a portion of the assessment for improvements to each of the separate buildings. We do not, however, regard this practice as anything beyond the lease-administration convenience it was intended to be.
Our conclusion that it is only the total assessment which may be appealed does not, however, deprive one of the multi-tenants from tax appeal recourse. See, so concluding, Ames Dept. Stores v. Assessor, supra, 476 N.Y.S.2d at 224-225. The real impact of the multiple tenancy is not to lessen the interest of any one tenant but rather to implicate the interests of all the other tenants as well, whether or not they are parties. We are persuaded that all of these interests can be adequately protected by procedural techniques available to the Tax Court by which it can assure that one tenant's prosecution of the appeal *607 will not prejudice the rights of either the other tenants or the owner.
In large measure, the appeal of the entire assessment by one of the tenants is in the nature of a representative action. All will be benefitted by a reduction and all bear the risk of an assessment increase. While the number of tenants will probably rarely justify the use of a class action pursuant to R. 4:32, the representative techniques and procedures therein provided are adaptable to meet the needs of this kind of litigation. Thus, all other tenants should be noticed of the action and given an opportunity to intervene as parties, otherwise participate, consent to be bound, or disclaim participation altogether. It may also be appropriate for the court to condition the right to proceed on the participating parties' agreement to indemnify the disclaiming tenants in the event of an increase. Sharing of the financial burdens of prosecuting the action may also be an appropriate matter for the court to consider. While there are assuredly problems and complexities inherent in such representative litigation, we do not regard them as of sufficient magnitude to justify depriving individual tenants or the tenants collectively of the right to challenge the assessment.
We believe that the adoption of rules governing such actions in the Tax Court would be a wise course for the future, and we commend to the Supreme Court Committee on the Tax Court its consideration of this matter. We are, however, also convinced that the Tax Court, even without such rules, has the power to enter an appropriate order to protect and accommodate the rights of all interested persons. That power is vouchsafed by R. 4:1 which expressly provides that all of the Part IV rules apply to the practice and procedure in the Tax Court except as otherwise provided by the Tax Court rules. We note, too, that the Part I rules similarly apply by reason of R. 1:1-1. R. 1:1-2 specifically provides that in the absence of rule, the court may proceed in any manner compatible with the purposes of securing "a just determination, simplicity in procedure, fairness in *608 administration and the elimination of unjustifiable expense and delay." We have no doubt that guided by these principles, the Tax Court can deal effectively with the procedural difficulties of representative or collective litigation.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The original term of the lease entered into January 1977 was 40 years. An October 1977 amendment of the lease extended the term to its present 50 years.
[*] It has come to the court's attention that subsequent to the filing of this opinion a Tax Court opinion by Judge Lario was approved for publication which reaches the same conclusions we have reached here. See Ewing Township v. Mercer Paper Tube Corporation, 8 N.J. Tax. 84 (Tax Ct. 1985), with which we concur.
[2] We note that while Centre Properties objected to plaintiff's prosecution of the appeal, in its lease with another shopping center tenant it apparently expressly permitted the other tenant to prosecute a tax appeal and that tenant, in fact, has regularly done so. Particularly in view of the affidavit of plaintiff's president, heretofore referred to, there is no explanation for this inconsistency in tenant treatment and no indication of how the owner's legitimate interests would be prejudiced by an appeal filed by one and not another tenant.