269 N.J. Super. 224 (1993)
634 A.2d 1381
VILLAGE SUPERMARKET, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MAYFAIR SUPERMARKETS, INC., A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
Decided August 24, 1993.
*227 T.C.C. Humick and Sheilah O'Halloran for plaintiff (Schneck, Price, Smith & King, attorneys).
Mark H. Sobel and Bruce D. Greenberg for defendant (Greenbaum, Rowe, Smith, Ravin & Davis, attorneys).
*228 WECKER, J.S.C.
Plaintiff Village Supermarkets ("Village") brings a two-count complaint against defendant Mayfair Supermarkets ("Mayfair") for intentional interference with (1) contractual advantage and (2) prospective economic advantage. Mayfair operates a Foodtown supermarket in Westfield. Village is seeking variances to allow construction of a ShopRite supermarket on the Westfield/Garwood line, on property it has contracted to purchase. Mayfair seeks to dismiss Village's complaint.
The test on a motion to dismiss under R. 4:6-2(e), challenging "the legal sufficiency of the facts alleged on the face of the complaint," is "whether a cause of action is `suggested' by the facts." Printing Mart v. Sharp Electronics, 116 N.J. 739, 746, 563 A.2d 31 (1989). It is not a question of how likely plaintiff is to prove the facts alleged, but rather whether a liberal, "generous and hospitable approach" to the complaint reveals the elements of a legal claim. Id. The plaintiff should be given the opportunity to amend to supply a missing element if necessary. Id. For reasons that will be apparent, no amendment can cure the defects in this complaint.
Village seeks damages allegedly resulting from Mayfair's opposition to Village's variance applications before the planning boards of Westfield and Garwood. Village claims that Mayfair has no standing to object directly, and is acting improperly by funding the opposition of others who do have standing. Mayfair's motion to dismiss Village's complaint is granted without prejudice, on grounds that it is premature, and to permit it to continue violates Mayfair's constitutional right to be heard at the municipal level.

I. Prematurity
Village's suit is analogous to a counterclaim for malicious prosecution in a pending case. See The Penwag Property Co. Inc. v. Landau, 76 N.J. 595, 388 A.2d 1265 (1978). An action for malicious prosecution is disfavored. The burden upon one bringing such an action is heavy because of the chilling effect upon *229 legitimate, as well as less than legitimate, lawsuits. Id. Penwag holds that favorable disposition of the underlying claim must precede an action for malicious prosecution. Neither damages nor restraints are available on such a counterclaim, even if the plaintiff loses and may subsequently be held liable for damages.
As Justice Pashman writes in his concurring opinion in Penwag, supra, 76 N.J. at 599, 388 A.2d 1265, regarding the requirements of "special grievance," i.e., damages, as a precondition to the cause of action:
This seemingly harsh rule is necessary to avoid having prospective plaintiffs discouraged from seeking vindication of their rights by the threat of such a retaliatory suit.
....
For similar reasons I join in the Court's ruling that an action for malicious use of process may not be maintained as a counterclaim in the action alleged to have been maliciously brought. The societal cost resulting from the deterrence of just claims by reason of the powerful leverage such a practice would afford defendants far outweighs the utility of any judicial economies it might produce.
The simultaneous attempt to punish (and implicitly to stop) the activity is what is disapproved.
The same rule should apply here. If defendant Mayfair is acting improperly in connection with the current hearings before the municipal planning boards, it will eventually have to answer in damages. The propriety or impropriety of its role in the quasi-judicial proceeding before the municipal boards cannot be evaluated until those proceedings have come to a conclusion.
Additionally, there can be no proof of damages at this stage. While exactitude is not required to prove damages, the most significant element is unknown: whether plaintiff will build its supermarket.

II. First Amendment Rights
There is a further reason for dismissing the action at this time. To impose damages for objecting in a planning board proceeding would chill First Amendment rights (and parallel state constitutional rights) which are protected under the Noerr-Pennington[1] *230 doctrine. Under that doctrine participation in judicial and administrative proceedings (as well as advocacy in the legislative arena, i.e., lobbying) is protected unless it is "objectively baseless," thereby falling within the "sham" exception to the doctrine. See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. ___, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). This recent United States Supreme Court case holds that if a party's participation in litigation is objectively reasonable, its subjective intent is legally irrelevant. Thus plaintiff's argument that defendant is motivated by an improper, anti-competitive goal is legally irrelevant.
While Noerr and Pennington arise in the anti-trust context, the United State Supreme Court recognizes the doctrine "in other contexts...." Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., supra, 508 U.S. at ___, 113 S.Ct. at 1927, 123 L.Ed.2d at 623:
The cause of action for intentional interference with either contractual or prospective economic advantage is analogous at common law to the statutory anti-trust action. Applying the Noerr doctrine is clearly appropriate. Whether applying Noerr as an anti-trust doctrine or invoking it in other contexts, we have repeatedly reaffirmed that evidence of anti-competitive intent or purpose alone cannot transform otherwise legitimate activity into a sham.
In the years between Noerr and Columbia Pictures, the doctrine was expanded to administrative hearings and to litigation, and not limited to legislative lobbying.
The essential First Amendment rights protected by Noerr require its application to state tort claims such as Village's and not only to antitrust suits as in Noerr. See, e.g., Brownsville Golden *231 Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159-60 (3d Cir.1988); Video International Prod. Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir.1988); Sierra Club v. Butz, 349 F. Supp. 934 (N.D.Cal. 1972):
This court agrees that when a suit based on interference with advantageous relationship is brought against a party whose "interference" consisted of petitioning a governmental body to alter its previous policy a privilege is created by the guarantee of the First Amendment. This court, however, does not believe that privilege should depend upon malice. For the reasons given by the Supreme Court in [Noerr], this court is persuaded that all persons, regardless of motive, are guaranteed by the First Amendment the right to seek to influence the government or its officials to adopt a new policy, and they cannot be required to compensate another for loss occasioned by a change in policy should they be successful.
[Id. at 938.]
The holding in Columbia Pictures deals with the "sham" exception to Noerr-Pennington immunity. Resolving a conflict among the circuits, 508 U.S. at ___ n. 3, 113 S.Ct. at 1925, 123 L.Ed.2d at 620 n. 3, Columbia Pictures holds that regardless of a litigant's subjective intent to inhibit competition, an objectively reasonable effort to litigate cannot be a sham. Clearly, successful litigation cannot be a sham. 508 U.S. at ___, 113 S.Ct. at 1927, 123 L.Ed.2d at 622. Columbia Pictures implicitly overrules a key holding of In re Burlington Northern, Inc., 822 F.2d 518 (5th Cir.1987), upon which Village relies. This is further evidence that the present suit is premature; we do not know whether Mayfair will be successful. Village argues that Mayfair's opposition is part of a larger scheme, involving competition in other municipalities, where Mayfair has allegedly opposed Village's projects. This circumstances is alleged as evidence of a "sham."[2] Even if Village's complaint were amended to add an allegation of a "pattern of repetitive, baseless claims," it would remain premature to *232 allege any pattern that includes the current, pending opposition in Westfield and Garwood.
Litigation can only be a sham (thereby subject to a damage action) if it is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Only if "objectively meritless may a court examine the litigant's subjective motivation." Columbia Pictures, supra, 508 U.S. at ___, 113 S.Ct. at 1928, 123 L.Ed.2d at 624. Justice Stevens, concurring in the judgment but not in the entire majority opinion, was joined by Justice O'Connor in expressing the governing principle: "Access to the courts is far too precious a right for us to infer wrongdoing from nothing more than using the judicial process to seek a competitive advantage in a doubtful case."
508 U.S. at ___, 113 S.Ct. at 1933, 123 L.Ed.2d at 630. Participation in municipal planning board hearings is deserving of the same protection.

III. Standing in the Municipal Proceedings
Village argues that lack of "standing" makes Mayfair's involvement at the municipal level a "sham," which as a matter of law destroys Noerr-Pennington immunity. For the reasons that follow, it cannot be said that Mayfair's assertion of "standing"  more correctly a right to be heard at the municipal level  is objectively baseless. Mayfair correctly interprets Columbia Pictures to hold that if "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent," 508 U.S. at ___, 113 S.Ct. at 1926, 123 L.Ed.2d at 621, then an objectively reasonable argument for standing is alone sufficient to avoid the "sham" exception. Even In re Burlington, supra, 822 F.2d at 530, finds Noerr protection as long as a party ultimately held not to have standing had a reasonable basis to believe it did.
Defendant's standing argument is threefold. First, as a tenant under a triple-net lease with the obligation to pay real estate taxes to the municipality, Mayfair claims standing to object to the variance. Second, because the variance application raises matters *233 of public interest, Mayfair claims standing to represent the public interest. Third, even if defendant does not itself have standing, there is no bar to its financial backing of another party (Reilly Oldsmobile) which as an adjoining property owner indisputedly has standing. Fourth, to subject Mayfair to this separate litigation contemporaneous with the planning board proceedings would chill not only this defendant but other potential objectors from protected activity. This last is the very rationale that underlies the Noerr-Pennington doctrine. While Mayfair's arguments will not necessarily prevail, the planning boards and not the Superior Court must make the initial decision whether Mayfair can be heard directly or indirectly. Mayfair's arguments separately and together are not objectively baseless.

A. Taxpayer
Village argues that Mayfair is not an "interested party" within the meaning of N.J.S.A. 40:55D-4, which in pertinent part defines the term: "Any person, whether residing within or without the municipality, whose right to use, acquire or enjoy property is or may be affected by any action taken under this act...."
Mayfair claims that as a long-term tenant with a lease obligation to pay the real property tax, it must be treated as a taxpayer and is entitled to be heard before the planning board.
There is some support for the proposition that any local taxpayer has standing to object to a variance application, although the question has not clearly been resolved. See Booth v. Rockaway Tp. Bd. of Adj., 50 N.J. 302, 305, 234 A.2d 681 (1967): "the standing of a taxpayer in a municipality has traditionally been less stringently challenged than that of a non-resident of the municipality."
See also Paramus Multiplex Corp. v. Hartz Mtn. Ind., Inc., 236 N.J. Super. 104, 109, 564 A.2d 146 (Law Div. 1987) (out-of-town movie house has no standing to object to application including a new movie house because increased competition held not to affect a right to "use, acquire or enjoy property") (citing, among others, *234 Aurentz v. Planning Bd. of Little Egg Harbor, 171 N.J. Super. 135, 408 A.2d 140 (Law Div. 1979)).
"It is too narrow an interpretation to hold that an `interested party' is only one whose property value or property use is directly affected.... Plaintffs, as residents and taxpayers, may be concerned with the overall zoning scheme and comprehensive plan of the township." Aurentz, supra, 171 N.J. Super. at 143, 408 A.2d 140.
Aurentz involved a developer's application for a major subdivision. Cf. Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 635, 525 A.2d 323 (1987) aff'g as modified 206 N.J. Super. 597, 503 A.2d 370 (App.Div. 1986), holding that a tenant with net lease may prosecute a property tax appeal under appropriate circumstances: "[It] should be the rule and not the exception in the case of a single net-lease tenant occupying a free-standing building on a single parcel...."
The Appellate Division expressed the rationale: "We are satisfied that in the context of modern commercial realty this construction of [N.J.S.A. 54:3-21] is too narrow.... To conclude that the leased property is not the tenant's is similarly unrealistic and contravenes ancient real property principles...."
206 N.J. Super. at 601-02, 503 A.2d 370. N.J.S.A. 54A:4-3 allows residential tenants the benefit of a property tax rebate although the tenant is not directly responsible for the tax.

B. Public Interest
Our Supreme Court has tended to define "standing" in zoning cases more broadly than has the United States Supreme Court. See Home Builders League of South Jersey, Inc. v. Tp. of Berlin, 81 N.J. 127, 131, 405 A.2d 381 (1979) (court challenge to validity of zoning ordinance).
Holding that a party has a sufficient interest or stake in the application to be heard at the planning board is not to say that the party's interest will be given substantial weight, much less that its interest will be determinative. The members of the Home Builders *235 League certainly had their own private, profit-based motives. However, the Court found sufficient public stake in the issue (minimum square footage requirements) to construe standing broadly. The Village application has much less far-reaching consequences than were raised in Home Builders, where exclusionary zoning was the underlying issue. It is not clear that the "public interest" doctrine of Home Builders of Southern Burlington Cty. NAACP v. Tp. of Mt. Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), would apply here. But it is not unreasonable under those cases for Mayfair to argue that its views should be heard, including its argument for "standing."
It has also been held that an "interested party" must have special damages and suffer greater injury than the public at large. See Rose v. Chaikin, 187 N.J. Super. 210, 221-22, 453 A.2d 1378 (Ch.Div. 1982). The answer is unclear, but it is a legitimate question for the board.

C. Third Party Funding
Village makes much of the fact that one of the objectors that is within 200 feet of the property, Reilly Oldsmobile, is being funded in its opposition by Mayfair. For purposes of this motion, that is assumed to be true. There is no inherent evil in the fact. See, e.g., City of Cleveland v. Cleveland Elec. Illuminating Co., 734 F.2d 1157, 1161, 1162 (6th Cir.), cert. denied, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984); Wilmorite, Inc. v. Eagan Real Estate, Inc., 454 F. Supp. 1124, 1133 (N.D.N.Y. 1977), aff'd 578 F.2d 1372 (2d Cir.1978) (mall operators' opposition to competing mall development is protected by Noerr-Pennington from state tort claim). In Pacific Gas and Elec. Co. v. Bear Stearns and Co., 50 Cal.3d 1118, 270 Cal. Rptr. 1, 791 P.2d 587, 598 (1990) the court said:
Given the criticism of these causes of action and the dangers inherent in imposing tort liability for competitive business practices, we have no motivation to expand these torts so that they begin to threaten the right of free access to the courts. Our legal system is based on the idea that it is better for citizens to resolve their differences in court than to resort to self-help or force. It is repugnant to this *236 basic philosophy to make it a tort to induce potentially meritorious litigation. To permit a cause of action for interference with contract or prospective economic advantage to be based on inducing potentially meritorious litigation on the contract would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution.
We are satisfied that the malicious prosecution cases strike the appropriate balance between the right to free access to the court and the interest in being free from the cost of defending litigation. We conclude that a plaintiff seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor.
Compare Landmarks Holding Corp. v. Bermant, 664 F.2d 891, 893-94 (2d Cir.1981) (sham found where defendants had kept their financing and dual legal representation secret from the very parties whose claims were being financed).
Third party funding by Mayfair is of course a factor available for the board's consideration when it weighs the evidence presented by Reilly, or any cross-examination by the attorney for Reilly.
In the context of a planning board hearing, the term "standing" may be misleading. Rather, it is a question of the right to offer evidence and/or cross-examine the applicant's witnesses (or those called by the board itself). Clearly there is a danger of circularity, since only "interested persons" have a right to be heard. But the board can and does weigh what it hears, allowing for the motive and bias of each witness or cross-examiner. There is great stress on making a complete record of all factors considered.
Our courts have recognized the planning board's likely familiarity with local conditions and permissible reliance thereon. See Baghdikian v. Bd. of Adjustment, 247 N.J. Super. 45, 47, 52, 588 A.2d 846 (App.Div. 1991) (proper for board to take judicial notice of certain facts and to rely on information and experience of its members, so long as these are placed on the record); Burbridge v. Mine Hill Tp., 117 N.J. 376, 568 A.2d 527 (1990); William M. Cox, New Jersey Zoning and Land Use Administration, § 27-7.4 (1993). In this respect, the board's role is quite difference from that of the trial judge, who may not consider facts personally known that are not otherwise in evidence. Full disclosure is the *237 key to the board's proper consideration of all the facts. Thus an objector may properly be subject to questions by the board that would reveal who is financing his or her appearance  not because third-party financing disqualifies the objector, but because it allows a full weighing of the evidence. There does not appear to be any secret about Mayfair's role in financing the Reilly objection.
Village argues that this very lawsuit and the discovery it would permit are essential to a full and fair review by the planning board. That argument is without merit.

D. Constitutional Considerations
The New Jersey Constitution, article 1, paragraph 18 provides: "The people have the right freely to assemble together, to consult for the common good, to make known their opinions to their representatives, and to petition for redress of grievances."
Our State Constitution thus grants rights protected as well by the First Amendment to the U.S. Constitution. The Court in Keuper v. Wilson, 111 N.J. Super. 502, 268 A.2d 760 (1970), held that after declaratory judgment that a film is not obscene, it was proper to grant an injunction against prosecution for obscenity. It then expressed this concept simply: "In this action the defendants are claiming rights guaranteed to them by the First Amendment to the U.S. Constitution. It is the obligation of this court to protect such rights." Id. at 508, 268 A.2d 760.
(See also Section II of this opinion.)
It is true that repetitious, baseless activity, including litigation, can be actionable as a sham that is excepted from First Amendment protection. See e.g., California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642, 648 (1972). But we cannot know yet whether Mayfair's activity in the municipal proceeding is baseless. To allow such a premature action would encourage layer upon layer of collateral litigation. This would seriously chill objector participation at the municipal level, especially in cases (although not this *238 one) where the applicant is a substantial commercial entity and the objectors are individuals of modest means.
It is obvious that virtually all of the cases cited by either party on the issue of immunity arose after the conclusion of the underlying litigation, and sought damages rather than prior restraint. Village has not cited, and in oral argument could not cite, any case involving a defendant's role in another pending suit. Similarly, there is no authority for granting prior restraint against Mayfair's involvement in the municipal proceeding. To permit this suit to continue would do indirectly what the court could not do directly.

E. Statutory Construction
There is some support in other provisions of the Municipal Land Use Law, N.J.S.A 40:55D-1 to -129, for a broad enough interpretation of "interested persons" to include Mayfair. In the present posture of this case, Mayfair has only to establish that it has an "objectively reasonable" argument for standing. (See Part II. of this opinion.)
An application to the planning board for a variance and site plan approval requires a fact-finding hearing that is not literally an adversary process. See generally, Cox, supra, at § 27-3.2. The proceeding is not a lawsuit. Objectors' have the right to be heard. Id. § 27-3.4. While notice must be specifically given to property owners within 200 feet, they are not the only ones with standing to participate. See Mocco v. Job, 56 N.J. Super. 468, 479, 153 A.2d 723 (App.Div. 1959). Public notice in a local newspaper is also required, along with notice to various other official bodies. N.J.S.A. 40:55D-12. That suggests a broad definition of those whose interests should be considered and who should be heard. See Cox, supra, at § 27-3.5. Quoting Morris Co. Fair Housing v. Boonton Tp., 220 N.J. Super. 388, 532 A.2d 280 (Law Div. 1987), aff'd, 230 N.J. Super. 345, 553 A.2d 814 (App.Div. 1989), Cox finds the decision "representative of the concern of the courts that all interested persons have the right to be heard and to cross-examine other witnesses." Cox, supra, at *239 § 27-3.2. While time and avoidance of repetition are important, hearing "all interested persons" is more important. Ibid.
I have not found it necessary to rely upon the facts supplied by certifications outside the original pleadings. This is not a case where an inadvertent or technical omission in the complaint suggests an amendment that would cure the defect. There is no valid tort theory upon which plaintiff can proceed at this time. See Printing Mart v. Sharp Electronics, 116 N.J. 739, 771-72, 563 A.2d 31 (1989).
Nor should discovery be permitted. In opposing summary judgment based on incomplete discovery (and this is not summary judgment), "plaintiff has an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Auster v. Kinoian, 153 N.J. Super. 52, 56, 378 A.2d 1171 (App.Div. 1977). Where the unknown facts are unknown because they have not yet occurred, and not because of incomplete discovery, it is obvious that plaintiff cannot make the required showing. That is precisely why this lawsuit is premature. The complaint is therefore dismissed under R. 4:6-2 for failure to state a claim upon which relief can be granted.
NOTES
[1] Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, reh. den. 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864 (1961) (Sherman Act does not apply to railroads' lobbying even though sole motive was to destroy competition from truckers and even though railroads used third parties to wage their campaign); United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965): ("Joint efforts to influence public officials do not violate the antitrust laws even though intending to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act.")
[2] Ironically, In re Burlington, supra, 822 F.2d at 526, upon which Village relies, does not support Village's argument, holding as it does that the test of "sham" activity must be applied to the specific, "narrow petitioning activity," and not to some broader scheme of which the narrow activity is claimed to be part.