DeALMEIDA, J.T.C.
Plaintiffs were the landlord and the tenant in a triple net lease spanning thirty-five years. The lease covered land on which was located a single, free-standing building containing a restaurant operated by the tenant. The lease required the tenant to pay all local property taxes on the subject property, an obligation dutifully fulfilled during the years in question. The landlord, acting without the tenant’s knowledge, filed these matters challenging the assessments on the subject property for tax years 2003, 2005, *74 2006, and 2007. (No appeal was filed for 2004.) Once made aware of the pending appeals, the tenant sought to exercise its rights in these matters and was joined as a plaintiff on the landlord’s motion. Each party contends that it is entitled to any refund of taxes should the assessments on the subject property be reduced. In addition, each party seeks control of the pending tax appeals, including the ability to accept or reject settlement offers made by the municipality.
For the reasons explained more fully below, the court concludes that the tenant is entitled to any refund of taxes resulting from the successful prosecution of the pending tax appeals. In addition, the court concludes that the tenant is entitled to control the appeals, and has the authority to accept or reject settlement offers made by the defendant municipality.
I. Findings of Fact
The facts are not in dispute. Plaintiff Aperion Enterprises, Inc., (“Aperion”) owns real property in the Borough of Fair Lawn. The property is designated by the municipality as Block 1206, Lot 17 and is commonly referred to as 39-10 Broadway.
On or about March 27, 1998, Aperion entered into a commercial lease with plaintiff Quo Non Ascendet, Inc. (“Quo Non”) for the purpose of operating a restaurant on the property. The lease, which covered a thirty-five-year term, contained a rider that provided that Quo Non “shall pay all taxes and assessments levied against the property by the Borough of Fair Lawn, County of Bergen or State of New Jersey, payments to be no less than quarterly. Tenant shall provide proof of payment to the Landlord, each quarter of each year of occupancy.” Quo Non’s obligation under the lease was to pay local property taxes directly to the municipal tax collector and not to Aperion as a component of rent. In addition, Quo Non was required by the lease at its “own cost and expense, [to] make all repairs, including painting and decorating,” to “pay when due all the rents or charges for water or other utilities” and to secure insurance on the property.
These provisions are typical for what is commonly known as “a triple net lease, in which the tenant pays utilities, taxes, insurance, *75 and maintenance and the landlord pays for structural repairs only.” Appraisal Institute, The Appraisal of Real Estate, 451 (13th ed.2008). The lease makes no mention of which party may file an appeal of the local property tax assessment on the subject property and does not indicate which party would be entitled to a refund of local property taxes in the event that the assessment on the subject property is reduced.
Quo Non operated a restaurant on the property under the lease from March 1998 to November 13, 2007. It was the only tenant on the property and the restaurant occupied the only building on the site. On November 13, 2007, Quo Non sold the restaurant business to Gotham Beverages, Inc. (“Gotham”). The sale included an assignment to Gotham of the lease between Aperion and Quo Non. In the assignment, Quo Non reserved to itself any right it might have under the lease to a refund of taxes which might result from the pending tax appeals. Quo Non paid all local property taxes due on the subject property for tax years 2003, 2005, 2006, and until the November 13, 2007, assignment of the Lease to Gotham.
Aperion initiated these matters to challenge the assessments on the subject property for tax years 2003, 2005, 2006, and 2007. Quo Non was not named as a party and the record contains no evidence that Quo Non was put on notice by Aperion of the pendency of the tax appeals. Quo Non became aware of the pending tax appeals in the course of Superior Court litigation between Aperion and Quo Non arising from Aperion’s refusal to consent to the assignment of the lease to Gotham. Once aware of the pending appeals, Quo Non notified Aperion of Quo Non’s position that it is entitled to any tax refund resulting from the successful resolution of the appeals. In addition, Quo Non demanded that Aperion accept an offer of settlement that had previously been made by the municipality and forward any refund resulting from the settlement to Quo Non. Aperion declined to comply with these demands.
Quo Non subsequently filed suit against Aperion in the Superior Court, Chancery Division, alleging breach of contract and unjust *76 enrichment arising from Aperion’s filing of tax appeals without notice to Quo Non and Aperion’s failure to accept the settlement offer made by the municipality. The Chancery Division action was transferred to this court, where it remains pending. The claims raised in that suit are not addressed in this opinion.[1]
Aperion thereafter moved to join Quo Non as a plaintiff in these matters. That motion was granted without objection.
The parties cross-moved for an Order designating the plaintiff which has authority to control the tax appeals and to accept or reject any settlement offer made by the municipality. The court advised the parties that, in order to decide the cross-motions, the court would also need to resolve the question of which of the parties is entitled to any refund of local property taxes should the assessments on the property be reduced as a result of the pending tax appeals.
The court heard oral argument on March 23, 2009. Supplemental briefing followed.
II. Conclusions of Law
N.J.S.A. 54:3-21a provides:
Except as provided in subsection b. of this section (not applicable here) a taxpayer feeling aggrieved by the assessed valuation of the taxpayer’s property ... may on or before April 1 ... appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer ... may ... file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $750,000.00.
[ (Emphasis added). ]
In Ewing Twp. v. Mercer Paper Tube Corp., 8 N.J.Tax 84, 91 (1985), this court held that “the Legislature intended to include within the class of ‘aggrieved taxpayers,’ given the right to appeal tax assessments [under N.J.S.A. 54:3-21], any lessee whose lease covers the full tax year and requires him to pay the full assessment of the taxes levied.” This court concluded, however, that
because real estate taxes are a lien against the real estate, N.J.S.A. 54:5-6, and since in addition to a possible reduction there also exists the risk of an increased *77 assessment, F.M.C. v. Morris Plains Boro., 100 N.J. 418, 495 A.2d 1313 (1985); even though the tenant is solely responsible for the taxes, the owner of the real property is a necessary party, therefore any appeal by the sole tenant ... must be instituted in the name of the owner by the tenant as express agent for the owner, or, as co-plaintiff, or, in lieu thereof, the owner must be included as a co-defendant. [7<i at 91-92.]
The court noted that requiring the tenant to bring the appeal in the name of the owner or to name the owner as a party would provide “the owner with due process” and “avoid[] any future question that may arise relating to the collector of taxes’ obligation and responsibility concerning the correct payee of any possible tax refund.” Id. at 92. See R. 8:5 — 3(8) (requiring tenant filing tax appeal to serve a copy of the complaint on the record owner of the property). The court did not address the question of which of the parties — the owner or the net tenant — would have control of the tax appeal should both parties seek to prosecute the matter.
In Village Supermarkets, Inc. v. Township of West Orange, 106 N.J. 628, 630-32, 525 A.2d 323 (1987), the Supreme Court effectively affirmed the holding in Mercer Pa,per Tube and expanded on the factors to be considered when deciding whether a tenant in a net lease is a “taxpayer ... aggrieved by the assessed valuation” of the leased property within the meaning of N.J.S.A. 54:3-21. In that case, an entity that operated a supermarket was the tenant under a lease for a portion of a shopping center. The tenant was required by the lease to pay as additional rent to the landlord all local property taxes due on the portion of the property occupied by the supermarket, as well as an allocated share of the assessment on the common areas of the shopping center. Id. at 629, 525 A.2d 323. The tenant filed appeals with this court challenging the assessment on the entire shopping center for three tax years. Id. at 630, 525 A.2d 323. The landlord moved to intervene to have the three appeals dismissed for want of jurisdiction. Id. at 631, 525 A.2d 323. Although this court granted the motions, the Appellate Division reversed. Ibid.
On further review, the Supreme Court allowed the tenant’s tax appeals to proceed. The Court held that N.J.S.A. 54:3-21 “is not an insurmountable bar to the prosecution of an appeal by some *78 net-lease tenants, depending upon their economic circumstances.” Id. at 631-32, 525 A.2d 323. According to Justice O’Hern, who was writing for a unanimous Court, “[t]he most obvious example is the tenant in possession of a free-standing store under a net lease.” Id. at 632, 525 A.2d 323. “In the context of a long-term lease, the landlord has almost no interest in the assessment.” Id. at 632-33, 525 A.2d 323. “At the other end of the spectrum, however, is the tenant in possession of an ice cream stand in a suburban mall. Although such a tenant may have a tax payment or tax surcharge clause in its lease, its interest in the shopping center assessment should not properly be considered one that would confer an independent right to prosecute a tax appeal in its own name.” Id. at 633, 525 A.2d 323. As the Court explained, “[t]he question is one of degree, depending upon the relative circumstances of the parties and their economic interests.” Ibid.
Trial courts are to consider several factors before permitting an appeal to be “brought in the owner’s name by the tenant with notice to the owner.” Ibid. Those factors include:
(1) the provisions of the lease itself, its duration, the burden of the tax surcharge on the tenant, and the possibility that the issue can soon be resolved by renegotiation; (2) the tenant’s relationship to the property, whether it is the lead tenant in a shopping center or only one slightly affected by the assessment; (3) whether the tenant mil adequately represent the interests of the landlord and other tenants, or whether the tenant has interests adverse to either group; (4) the tenant’s ability to mount and prosecute an effective appeal; (5) the landlord’s overall relationship with the taxing authority, and whether this is but one of multiple properties as to which the landlord may wish to exercise the right to appeal.
[Id. at 634-35, 525 A.2d 323.]
The Court reiterated that these factors are relevant when considering “the right of a tenant to prosecute an appeal in the name of the landlord” and to determine “[w]hether a tenant should be considered fairly to represent the landlord’s interest as an aggrieved taxpayer under N.J.S.A. 54:3-21....” Id. at 635, 525 A.2d 323. Thus, while the Court concluded that “the right to appeal should be the rule and not the exception in the case of a single net-lease tenant occupying a free-standing building on a single parcel,” ibid., this holding was issued in the context of a case in which the landlord wished to terminate pending tax appeals that the tenant wished to prosecute. Here, both the landlord and the *79 tenant seek to prosecute the pending tax appeals and dispute which of the two has authority to control the appeals, an issue not directly addressed in Village Supermarkets.
Nothing in the Court’s opinion in Village Supermarkets suggests that the landlord, should it wish to take control of pending tax appeals, necessarily has an interest in the relevant property that predominates over that of the net-lease tenant. In fact, the landlord in Village Supermarkets sought to intervene in the pending tax appeals in order to seek their dismissal for want of jurisdiction. Id. at 629, 525 A.2d 323. Yet, the Court held that a net-lease tenant, if it has a sufficient stake in the outcome of the appeals and the ability to represent the landlord’s interests, may pursue tax appeals despite the landlord’s desire to have the matters terminated. The Court, therefore, in addition to recognizing that a net-tenant may have standing to file a tax appeal pursuant to N.J.S.A. 54:3-21, accepted the fact that, circumstances permitting, a net-lease tenant could prosecute tax appeals in a manner contrary to the wishes of the landlord.
Although the Village Supermarkets factors concern whether a net-tenant has standing to file a tax appeal pursuant to N.J.S.A. 54:3-21, in light of the Supreme Court’s recognition that tax appeals may proceed despite the landlord’s desire to have the appeals dismissed, this court finds that the Village Supermarkets factors are also relevant to the determination of whether the tenant’s interest in the assessments on the subject property are sufficient to vest in the tenant the authority to control tax appeals in which the landlord is a co-plaintiff. The Village Supermarkets factors are considered in turn:
“(1) the provisions of the lease itself its duration, the burden of the tax surcharge on the tenant, and the possibility that the issue cam, soon be resolved by renegotiation!.]” Id. at 634, 525 A.2d 323.
The lease between Aperion and Quo Non is silent with respect to the authority to prosecute tax appeals. As a general rule, however, parties “ ‘in New Jersey are ... presumed to have contracted with reference to the existing law.’ ” Camden Bd. of Educ. v. Alexander, 181 N.J. 187, 195, 854 A.2d 342 (2004)(quoting *80 Silverstein v. Keane, 19 N.J. 1, 13, 115 A.2d 1 (1955)); accord Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C., 365 N.J.Super. 241, 248, 839 A.2d 52 (App.Div.2003). The parties executed the net lease on the subject property on March 27, 1998, after the Supreme Court’s May 20, 1987, opinion in Village Supermarkets. The lease, therefore, is subject to the Court’s decision in Village Supermarkets allowing a net-tenant to pursue tax appeals despite the landlord’s objection in certain circumstances. Although the Court in Village Supermarkets, supra, indicates that “[I]andlords concerned about the issue can readily resolve it by a line in their leases[,]” 106 N.J. at 636, 525 A.2d 323, Aperion did not negotiate a provision in its lease eliminating or limiting Quo Non’s ability to pursue tax appeals on the subject property or granting Aperion the authority to control tax appeals where both parties seek a reduction in the assessment on the subject property.
The duration of the lease, thirty-five years, militates toward allowing Quo Non to control the tax appeals. Aperion ceded to Quo Non a long-term interest in the subject property and secured from Quo Non a long-term obligation to pay the local property taxes associated with the subject property. With respect to Quo Non’s tax burden, the parties are in agreement that Quo Non was responsible for the entire amount of local property taxes imposed on the subject property during Quo Non’s tenancy. Thus, Quo Non bears the entire local property tax burden associated with the subject property. The question of renegotiation of the right to pursue tax appeals is not relevant here, given Quo Non’s assignment of its lease to another tenant in November 2007.
“(2) the tenant’s relationship to the property, whether it is the lead tenant in a shopping center or only one slightly affected by the assessment[.]” Village Supermarkets, supra, 106 N.J. at 634, 525 A.2d 323.
Quo Non was the only tenant at the subject property and occupied the only building on the parcel. As the only entity responsible for local property taxes, Quo Non’s economic relationship to the property was great. As Justice O’Hern noted when *81 discussing tenants with a significant interest in the property they rent, “[t]he most obvious example is the tenant in possession of a free-standing store under a net lease. In the context of a long-term lease, the landlord has almost no interest in the assessment.” Id. at 632-33, 525 A.2d 323. Such is the case here.
“(3) whether the tenant will adequately represent the interests of the landlord and other tenants, or whether the tenant has interests adverse to either group!.]” Id. at 634, 525 A.2d 323.
Quo Non is represented by counsel in these matters and apparently is prepared to dedicate the resources necessary for the prosecution of the pending tax appeals. In addition, Quo Non, having paid the taxes at issue, and being entitled to any refund resulting from the tax appeals, as discussed below, has ample motivation to advocate effectively for a reduction in the assessments on the subject property. Aperion, which remains a party to a lease in which a new tenant bears the responsibility for all local property taxes assessed on the subject property through 2023, has offered no convincing argument that Quo Non’s prosecution of the tax appeals would adversely affect Aperion’s interests. There are no other tenants on the subject property, negating the need to examine whether Quo Non will act in a way that jeopardizes the interests of other tenants.
“(4) the tenant’s ability to mount and prosecute an effective appeal!.]” Id. at 634-35, 525 A.2d 323.
As discussed with respect to factor (3) above, Quo Non has the means, legal representation, and motivation to mount a serious challenge to the assessments under review in the pending tax appeals. In addition, Quo Non would be in possession of documents and other evidence regarding the rent and expenses paid by Quo Non. Such information would be essential to an estimation of the property’s fair market value based on the income approach to valuation. See Livingston Mall Corp. v. Township of Livingston, 17 N.J.Tax 18, 23-24 (1997).
“(5) the landlord’s overall relationship with the taxing authority, and whether this is but one of multiple properties as to which *82 the landlord may wish to exercise the right to appeal[.]” Village Supermarkets, supra, 106 N.J. at 635, 525 A.2d 323.
Aperion has offered no evidence with respect to its relationship with the taxing authority or its ownership of other property in Fair Lawn. Moreover, Aperion seeks to pursue and control the pending tax appeals. This establishes that Aperion is not of the view that the appeals should be dismissed in order to benefit Aperion’s relationship with the municipality.
The court will consider an additional factor, one raised by the parties, and which is plainly relevant to the question of whether Quo Non should be permitted to control the pending tax appeals: Which party is entitled to any refund of local property taxes which would result from a reduction of the assessments on the subject property for the years in question?
As noted above, the sole provision of the lease concerning the payment of local property taxes did not address the question of which party is entitled to a refund of taxes as the result of successful tax appeals. The lease provided that the tenant “shall pay all taxes and assessments levied against the property by the Borough of Fair Lawn, County of Bergen or State of New Jersey, payments to be no less than quarterly. Tenant shall provide proof of payment to the Landlord, each quarter of each year of occupancy.” A lease may contain an express provision concerning the refund of taxes as a result of a successful tax appeal. See Livingston Mall Corp., supra, 17 N.J. Tax at 20 (noting provision in lease providing for equitable division of tax refunds between landlord and tenant). The agreement between Aperion and Quo Non, however, contained no such provision.
The court concludes that the relevant provision of the lease quoted above is clear. A contract which contains clear language must be enforced as written. County of Morris v. Fauver, 153 N.J. 80, 103, 707 A.2d 958 (1998); East Brunswick Sewerage Auth. v. East Mill Assocs., Inc., 365 N.J.Super. 120, 125, 838 A.2d 494 (App.Div.2004). The lease obligated Quo Non to pay all local property taxes assessed against the subject property. As a practical and legal matter, the lease renders Quo Non the taxpay *83 er with full responsibility for the satisfaction of all tax obligations associated with the subject property. As the Appellate Division explained, under a net-lease scenario:
It may well be that the taxing authority looks only to the landlord for payment but, as a matter of economic reality, the ultimate payment obligation is the tenant’s and is fully enforceable as such by the landlord. To conclude that the tenant is not the taxpayer is incorrect and contrary to common practice and business usage. [Village Supermarkets, Inc. v. Township of West Orange, 206 N.J.Super. 597, 602, 503 A.2d 370 (App.Div.1986), aff'd as modified, 106 N.J. 628, 525 A.2d 323 (1987).]
It defies common sense and logic to conclude that a refund of local property taxes paid by Quo Non because of a reduction in the assessments on the subject property would be awarded to Aperion. Local property taxes are assessed against the property, not the property owner. Freehold Office Park, Ltd. v. Township of Freehold, 12 N.J.Tax 433, 440-41 (1992). Aperion had no independent obligation to pay the local property taxes on the subject property, having contracted with Quo Non to have the tenant assume fully the tax payment obligation. Aperion, therefore, has no right under the lease to recover any refund of local property taxes overpaid by Quo Non.
A conclusion by this court that Aperion is entitled to recover any refund of the taxes that Quo Non paid would constitute a windfall for Aperion and would amount to a revision of the lease. Aperion bargained for and received an enforceable agreement to have Quo Non pay to Aperion a monthly base rent. In addition, Aperion secured an agreement that Quo Non would pay, among other expenses, all local property taxes on the subject property. Those taxes were to be paid to the municipal tax collector and not to Aperion. Were Aperion to be awarded a refund of a portion of the taxes paid by Quo Non to the municipality, Aperion would receive, in addition to the agreed upon base rent and payment of local tax obligations by Quo Non, a bonus in the amount of the refunded taxes. Aperion did not bargain for the right to collect from Quo Non or the municipality any overpaid taxes associated with the subject property. This court lacks authority to revise the lease to grant to Aperion a benefit not incorporated in its contract with Quo Non. It is well settled that this court may not make for Aperion “a better or more sensible contract than the one [it] made *84 for [itself].” Kotkin v. Aronson, 175 N.J. 453, 455, 815 A.2d 962 (2003) (citation omitted).
Conversely, Quo Non agreed in the lease to pay a monthly base rent to Aperion and, among other things, to pay all local property taxes due with respect to the subject property. In the event that the pending tax appeals result in a reduction of the assessments on the subject property, Quo Non will have paid more in local property taxes on the subject property than were actually due. Were this court to award to Aperion the refund of local property taxes awarded in such circumstances, Quo Non will have paid more under the lease — the base monthly rent, the local property taxes due on the subject property, and an overpayment of those taxes — than it bargained for in its negotiations with Aperion. Permitting Quo Non to recover any tax refund resulting from, the pending tax appeals would merely put Quo Non in the position the parties’ agreed upon in the lease.
Even if this court were to consider the relevant provision of the lease to be ambiguous, which the court does not, the extrinsic evidence offered by the parties would not alter the court’s conclusion. Where an agreement is ambiguous a court may “consider all of the relevant evidence that will assist in determining the intent and meaning of the contract.” Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 269, 901 A.2d 341 (2006). “ ‘Antecedent and surrounding factors that throw light upon ... [the meaning of the contract] may be proved by any kind of relevant evidence.’ ” Ibid, (quoting 3 Corbin on Contracts § 579 (West I960)). “The polestar of construction is the intention of the parties to the contract ... and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded.” Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301, 96 A.2d 652 (1953). “Such evidence may ‘include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties’ conduct.’ ” Conway, supra, 187 *85 N.J. at 269, 901 A.2d 341 (quoting Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221, 405 A.2d 393 (1979)).
Aperion submitted a certification of George Konstantinidis who describes himself as the “owner” of Aperion and details the “circumstances at the time the Lease was entered into” which he characterizes as “pertinent presumptive facts in the case.” However, nothing in Mr. Konstantinidis’s certification indicates that he was personally engaged in the negotiation of the lease over ten years ago. Although George Konstantinidis indicates that his certification is based “on personal knowledge regarding the lease and rider thereto,” noticeably absent from the certification is any statement that George Konstantinidis represented Aperion in its negotiations with Quo Non. Nor does the record suggest that George Konstantinidis was the “owner” of Aperion at the time that the lease was executed. In fact, the lease was signed on behalf of Aperion by Emanuel Konstantinidis, who is identified in the lease as the President of Aperion. Based on these facts, the court finds that Aperion has offered no evidence that George Konstantinidis has personal knowledge of the negotiations that resulted in the lease provision at issue here. His certification, therefore, is not competent evidence. N.J.R.E. 602.
Moreover, the claims made in Mr. Konstantinidis’s certification are entirely lacking in credibility and contradict the express terms of the parties’ lease. Mr. Konstantinidis certifies that during the lease negotiations Aperion studied the local rental market and determined a monthly rental amount that it could expect to secure for the property. According to the certification, the base monthly rent contained in the lease was calculated by subtracting from the amount of monthly rent Aperion could expect from the subject property the amount of local property taxes assessed against the property, along with other expenses. Mr. Konstantinidis certifies that the base monthly rent, plus the local property taxes Quo Non agreed to pay, along with other expenses paid by the tenant, constitute the entire consideration to which Aperion is entitled each month under the lease. “In other words,” according to the certification, “Aperion deducted the full amount of the annual property taxes from the monthly rents” when calculating the *86 monthly base rent. Thus, Mr. Konstantinidis reasons, if Quo Non receives a refund of taxes as a result of a successful tax appeal it will have paid less under the lease than the amount for which it bargained and Aperion will have received less in rent than it would have demanded had it been aware that the assessment on the subject property would be reduced.
Mr. Konstantinidis’s certification is flawed. Nothing in the lease suggests that the base rent, local property taxes and other expenses were to be totaled each month to reach a certain amount of payments by Quo Non. If Mr. Konstantinidis’s certification were accurate, the terms of the lease would allow for a fluctuation in the base rent to reflect fluctuations in the amount of local property tax due on the subject property. The amount of local property taxes on real property in New Jersey is determined on a yearly basis. The assessed value of real property is determined as of October 1st of each year. N.J.S.A. 54:4-23. Thereafter, the municipality, the county and the local board of education establish their budgets and the local tax rate is set each year. See McMahon v. City of Newark, 195 N.J. 526, 541-42, 951 A.2d 185 (2008). The local property taxes due on the subject property change from year to year as the assessment on the subject property, overall assessments in the taxing districts, and relevant tax rates are set annually. Nothing in the lease suggests that the base rent would change from year to year as the local property taxes associated with the subject property changed.
Under Mr. Konstantinidis’s reasoning in the years that the local property taxes on the subject property rose, the base monthly rent should have been reduced. Otherwise, Aperion would receive more in total consideration under the lease than was bargained for by the parties. Similarly, in the years that the local property taxes fell, the base monthly rent should have risen to provide Aperion with what Mr. Konstantinidis described as the total consideration Aperion bargained for in its lease. The lease, however, contains no such provisions. This is so because the plain language of the lease establishes that Aperion- bargained for a base monthly rent and for Quo Non to be responsible for all local property taxes due on the subject property, regardless of the *87 amount of those taxes. This conclusion is supported by the certification of Theodore Laoudis, the President of Quo Non and a signatory on the lease, that local property taxes on the subject property increased almost every year during Quo Non’s tenancy and no downward adjustment was made to the base rent established in the lease, as no provision in the lease allowed for such an adjustment.
The court finds Mr. Konstantinidis’s certification that Quo Non never filed an action challenging the assessment on the subject property, even in a year when the restaurant was closed for renovations, to lack relevance with respect to the meaning of the lease. Quo Non’s payment of local property taxes on the subject property without objection for a period of nearly twenty years does not tend to prove or disprove that Aperion bargained for the recovery of any refund of those taxes resulting from a successful tax appeal. See N.J.R.E. 401. The mere fact that Quo Non did not seek to reduce the taxes on the subject property over the years is not evidence that it did not have a right to file a tax appeal or recover a refund should an appeal prove successful. There are numerous reasons why a taxpayer might forego filing a tax appeal, even one likely to be successful, including the expense of litigation, the taxpayer’s relationship with the municipality and landlord, and the dedication of the taxpayer’s resources to other endeavors more likely to be profitable. Moreover, the court notes that the record contains no evidence that, apart from the pending matters, Aperion filed any tax appeals with respect to the subject property during the time that Quo Non was a tenant. Under Mr. Konstantinidis’s view, Aperion’s lack of interest in reducing the assessments on the subject property could be interpreted as the landlord’s understanding that it would not be entitled to any refund resulting from a successful tax appeal.
For the reasons noted above, application of the Village Supermarkets factors to the facts of this case, as well as the additional factor articulated by this court, lead to the conclusion that Quo Non, the net-lease tenant, has a sufficient interest in the tax assessments on the subject property to warrant vesting that party with control over the pending tax appeals. In addition, Quo Non *88 has authority to accept or reject settlement offers made by the municipality in the pending appeals.
The fact that Quo Non is, as of November 2007, a former tenant at the subject property does not alter the court’s conclusion. Although Quo Non’s interest in the property has terminated, its interest in recovery of any refund of taxes it paid has not. Moreover, Aperion did not take full possession of the property at the conclusion of Quo Non tenancy. To the contrary, Quo Non assigned the lease to Gotham with approximately twenty-four years remaining on the term. Gotham assumed Quo Non’s obligation to pay all local property taxes. As a result, Aperion has no greater interest in the assessment on the subject property after Quo Non assigned the lease than it did while Quo Non was a tenant. The court notes, however, the probable limitation on Quo Non’s ability to agree to relief under the Freeze Act, N.J.S.A. 54:51A-8, with respect to final dispositions that might be entered in the pending tax appeals, particularly with respect to tax year 2007, as Quo Non has no interest in the property for the following years. See Zisapel v. Borough of Paramus, 20 N.J.Tax 209 (2002).
An Order implementing the court’s decision is enclosed.

 Aperion’s prior counsel, Steven R. Irwin, Esq., successfully moved to be relieved as counsel after the filing of the Chancery Division action.