**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

```
------------------------------------------------------x
I-78 LOGISTICS PARK LOPATCONG        :        TAX COURT OF NEW JERSEY
URBAN RENEWAL, LLC,                  :        DOCKET NO.  006903-2020
                                     :
        Plaintiff,                   :
                                     :
v.                                   :        Civil Action
                                     :
LOPATCONG TOWNSHIP,                  :
                                     :
        Defendant.                   :
------------------------------------------------------x
```

Decided:  July 22, 2021

Michael J. Caccavelli for plaintiff (Pearlman & Miranda, LLC, attorneys).

Lawrence P. Cohen for defendant (Lavery, Selvaggi, Abromitis & Cohen, P.C., attorneys).

Richard M. Conley for Robert J. Sweeney, C.T.A., municipal tax assessor for Lopatcong Township (Richard M. Conley, LLC, attorneys).

NOVIN, J.T.C.

This shall constitute the court's opinion on whether I-78 Logistics Park Lopatcong Urban Renewal, LLC ("plaintiff"), lacks standing to institute the above matter.

For the reasons expressed herein, the court finds that the Tax Court is vested with jurisdiction, and plaintiff possesses standing to bring the challenges asserted under its Complaint.

## I.     Procedural History

Plaintiff is the owner of the property located at 2900/1098 U.S. Highway Route 22, Lopatcong Township, Warren County, New Jersey (the "subject property"). The subject property is identified on Lopatcong Township's ("defendant") municipal tax map as Block 101, Lot 1, qualifier Q0050.

1

In accordance with the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -89 (the "Local Redevelopment and Housing Law"), defendant's governing body delineated certain property in Lopatcong Township, including the subject property, as blighted and "in need of redevelopment."[1]  See N.J.S.A. 40A:12A-5.  On December 15, 2015, defendant and Opus Investments LLC executed a Redevelopment Agreement (the "Redevelopment Agreement").  The Redevelopment Agreement called for the acquisition of the lands in need of redevelopment and construction of approximately one million square feet of warehouse and light industrial space, including public recreational space and infrastructure improvements (the "Redevelopment Project").  On or about January 29, 2018, the area in need of redevelopment was sold to plaintiff and plaintiff assumed all obligations under the Redevelopment Agreement as the urban renewal entity for the Redevelopment Project.[2]

By Ordinance No. 2018-12, dated August 23, 2018 (the "Ordinance"), defendant approved plaintiff's application for a long-term tax exemption and entry into a financial agreement with plaintiff for the Redevelopment Project, including the subject property, under the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -22 (the "LTTEL").[3]

On September 19, 2019, plaintiff and defendant executed a First Amended Financial Agreement (the "First Amended Financial Agreement").[4]  The First Amended Financial

---

[1]  The lands comprised the former Ingersoll Rand site and were commonly known as Block 100, Lot 1 and Block 101, Lot 1, Qualifier 0050 on defendant's municipal tax map.

[2]  Plaintiff acquired the subject property by Deed dated January 29, 2018, for reported consideration of Thirteen Million Dollars.

[3]  The Ordinance further authorized issuance of up to $750,000 in non-recourse Redevelopment Area Bonds to assist plaintiff in financing a portion of the costs associated with the Redevelopment Project.  The Ordinance further provided that the bonds would be secured by the annual service charge payments to be made by plaintiff under the financial agreement.

[4]  Plaintiff and defendant previously entered into a financial agreement, however, due to a "drafting error," the financial agreement was amended and restated into the First Amended Financial Agreement.  The revisions incorporated into the First Amended Financial Agreement clarified that

Agreement memorialized the long-term tax exemption afforded plaintiff and the Redevelopment Project, the terms of plaintiff's annual service charges, when payments commence under the agreement, the dates by which all quarterly installments must be paid, how payments will be applied, the offsets or credits plaintiff is entitled to against the annual service charges for land taxes paid, and when the agreement and tax exemption expires.[5]

On April 21, 2020, plaintiff instituted this action challenging the subject property's land assessment for the 2020 tax year. Plaintiff's Complaint charges that the subject property's land assessment "is/are in excess of the true or assessable value of the property." For the 2020 tax year, the subject property bore a tax assessment as follows:

| | |
|---|---|
| Land: | $12,684,900 |
| Improvements: | $ 0 |
| Total: | $12,684,900 |

On November 6, 2020, plaintiff and defendant submitted a Stipulation of Settlement ("Stipulation of Settlement"), requesting entry of a judgment reducing the subject property's land assessment from $12,684,900 to $2,660,000 for the 2020 tax year.

By Deficiency Notice dated November 18, 2020, the court informed the parties that the Stipulation of Settlement could not be processed because it omitted the following language: "[t]he assessor of the taxing district has been consulted by the attorney for the taxing district with respect to this settlement and has concurred." [6]

---

the subject property may be leased to a third-party and that the third-party "is not required to be an urban renewal entity."

[5] The annual service charges were assigned by defendant to a bond trustee. Plaintiff agreed to pay the trustee the annual service charges quarterly, "at the same times taxes are due." The trustee will apply a portion of the annual service charge to pay the debt service on the bonds. The portion of the annual service charge referred to as the "Township portion," will be remitted to defendant upon receipt by the trustee.

[6] R. 8:9-5(a) provides that a "[j]udgment in a local property tax matter may be entered upon stipulation of the parties supported by such proof as the Court may require." Under this rule, the

By letter dated November 24, 2020, plaintiff's counsel advised the court that "the municipality and the taxpayer have reached a settlement on the above-captioned mater [sic] . . . [t]he municipal tax assessor, however, has not agreed to the settlement and for that reason the submitted Stipulation of Settlement does not have a representation to the effect that the tax assessor concurs with the settlement."

On December 8, 2020, the court conducted a telephone conference call with plaintiff's counsel and defendant's counsel. As a result of defendant's municipal tax assessor's apparent contention that plaintiff lacked standing to pursue the local property tax appeal in the above matter, and rejection of the proposed settlement and the court advised the parties that an Order to Show Cause would be entered, affording plaintiff, defendant, and defendant's municipal tax assessor an opportunity to be heard.[7][8]

---

Tax Court requires the stipulation of settlement to recite the following: "The assessor of the taxing district has been consulted by the attorney for the taxing district with respect to this settlement and has concurred."

[7] The municipal tax assessor plays a "crucial role" in local property tax assessment and administration, therefore, the court "requires the direct involvement of the assessor." Clinton Twp. Citizens Comm. v. Clinton Twp., 185 N.J. Super. 343, 355 (Law. Div. 1982). "The agreement of the assessor to any such settlement helps to assure the court that the settlement was arrived at on the merits and that the resulting assessment will be at the fair assessable value of the subject property consistent with assessing practices generally applicable in the taxing district as required by law." Id. at 356 (citing South Plainfield v. Kentile Floors, Inc., 4 N.J. Tax 1 (Tax 1981), aff'd, 92 N.J. 483 (1983)). See also Rosenberg v. South Orange Twp., 8 N.J. Tax 1, 5-6 (Tax 1983).

[8] During the December 8, 2020 telephone conference call, the court inquired whether defendant would be appointing separate counsel for the municipal tax assessor, since the assessor would be appearing before the court as an agent and representative of defendant. See Mobil Oil Corp. v. Greenwich Twp., 20 N.J. Tax 66, 79-80 (Tax 2002) (concluding that a municipal tax assessor operates in a hybrid position serving "several masters because he or she is subject to the control of both the municipality and the State"). See also State v. Rogers, 308 N.J. Super. 59, 66 (App. Div. 1998) (concluding that the unauthorized "practice of law is not 'limited to the conduct of cases in court but is engaged in whenever and wherever legal knowledge, training, skill and ability are required.'")

On December 16, 2020, the court entered an Order to Show Cause (the "Order to Show Cause") instructing plaintiff, defendant, and defendant's municipal tax assessor to appear before the court on February 16, 2021, and to offer testimony or evidence as to why the Stipulation of Settlement should not be accepted by the court and a judgment entered thereon.[9]

By letter dated February 2, 2019 [sic],[10] counsel representing defendant's municipal tax assessor, Robert J. Sweeney, C.T.A. (the "assessor"), submitted a response to the court's Order to Show Cause. Citing N.J.S.A. 54:3-21(b), counsel for the assessor argued that the "litigation has no legal basis," because plaintiff is bound by the terms of the First Amended Financial Agreement with defendant involving the subject property under the LTTEL.[11] As such, counsel for the assessor argued that plaintiff lacked standing to bring the Complaint, thereby requiring its dismissal. Accordingly, on February 8, 2021, the court conducted a telephone conference call with counsel for the assessor, counsel for plaintiff, and counsel for defendant and afforded them the opportunity to submit briefs, and argument addressing plaintiff's alleged lack of standing and assigned dates for submission.

On March 30, 2021, the assessor submitted a brief and exhibits arguing that plaintiff's Complaint must be dismissed because both plaintiff and defendant lack standing, under N.J.S.A. 54:3-21(b), to maintain this cause of action. The assessor posits that because the subject property

---

[9] See City of Atlantic City v. California Ave. Ventures, LLC, 23 N.J. Tax 62, 66 (App. Div. 2006) (concluding that "settlements in the Tax Court are distinguishable from settlements in other courts . . . The Tax Court need not enter a judgment based on a settlement if it is not satisfied that the proofs offered support the entry of a judgment. For that reason, such judgments are treated as adjudications on the merits.")

[10] The letter was uploaded to the eCourts case jacket on February 3, 2021.

[11] In addition, counsel for the assessor asserted that should the court determine plaintiff is not precluded from instituting a tax appeal in this matter, the court should conduct a plenary hearing on the appropriateness of the proposed settlement. Counsel for the assessor submitted four land sales, three in Pennsylvania, and one in Mercer County, New Jersey, as evidence of the subject property's proposed true value.

is part of the Redevelopment Project and subject to a financial agreement under the LTTEL, N.J.S.A. 54:3-21(b) expressly prohibits any challenges to the land tax assessment. Thus, the assessor maintains that plaintiff and defendant lack standing in this matter. Accordingly, the assessor submits that the court must dismiss plaintiff's tax appeal.

In addition, the assessor's brief maintains that the proposed settlement and reduction in the subject property's land assessment to $2,660,000 is unsupported by any independent valuation evidence. The assessor contends that the Stipulation of Settlement impermissibly fixes the subject property's 2020 land assessment because it is allegedly based on defendant's financial consultant's revenue projections under the First Amended Financial Agreement. Thus, because the subject property's proposed 2020 land assessment was not determined in accordance with established property valuation principles, but rather revenue projections, the assessor urges the court to set aside the Stipulation of Settlement.

In sum, the assessor contends that if the court does not dismiss plaintiff's Complaint for lack of standing, valuation evidence must be solicited, including assigning dates for the completion of discovery, exchange of appraisal reports, scheduling depositions, and testimony to determine whether $2,660,000 accurately reflects the true market value of the subject property's land.

In response, plaintiff argues that the assessor incorrectly interprets N.J.S.A. 54:3-21(b).[12] Plaintiff emphasizes that it is challenging only the tax assessment imposed on the "non-exempt land," and that the First Amended Financial Agreement does not fix, nor afford, a tax exemption to the subject property's land. Moreover, plaintiff highlights that in consideration for plaintiff's annual service charge payments and covenants under the First Amended Financial Agreement, a

---

[12] Defendant submitted no briefs in the above matter. However, during oral argument defendant recited that such failure was an oversight, and that it joins in plaintiff's brief.

tax exemption is afforded only to the improvements to be constructed and maintained on the subject property. Thus, while the improvements will be exempt from taxation under the LTTEL, the land on which the improvements will be constructed is not exempt from taxation and, therefore, is not subject to the provisions of the LTTEL. Additionally, plaintiff underscores that unless a "Housing project"[13] is to be undertaken by the urban renewal entity, land is prohibited from being classified as exempt from taxation under the LTTEL. Rather, the LTTEL contemplates that a property's annual land assessment will be determined in accordance with the valuation principles set forth under N.J.S.A. 54:4-23.

Here, plaintiff argues that the First Amended Financial Agreement comports with the LTTEL and expressly stipulates that the subject property's tax exemption applies only to the improvements and that "[l]and [t]axes shall be separately assessed by the Township in accordance with Applicable Law." Therefore, plaintiff maintains that N.J.S.A. 54:3-21(b) is inapplicable to challenges to the subject property's land assessment and when land is not assessed uniformly, and at its true and fair value, a taxpayer or taxing district is afforded a means for redress.

Plaintiff further argues that prohibiting a taxpayer or a taxing district from challenging an alleged discriminatory land assessment would be contrary to both established legal precedent and potentially injurious to the taxing district. An excessive land assessment could materially impact the revenue anticipated to be derived by the taxing district under a financial agreement because the urban renewal entity is entitled to a credit against the annual service charge for land taxes paid by it. Thus, plaintiff contends that prohibiting a taxpayer or a taxing district from appealing a land assessment exceeding its true market value will substantively reduce the annual service charge to be collected by the taxing district. Moreover, should N.J.S.A. 54:3-21(b) be interpreted in the

---

[13] As such term is defined under N.J.S.A. 40A:20-3.

manner argued by the assessor, a municipal tax assessor could fix the land assessment as high as he or she desires, without any recourse to a taxpayer or taxing district, in violation of fundamental due process, equal protection, and uniformity principles.

Thus, at issue is whether plaintiff's local property tax appeal challenging the subject property's 2020 land assessment is permissible under N.J.S.A. 54:3-21(b), because the plaintiff and the improvements to be erected on the subject property are bound by a financial agreement under the LTTEL.

## II. Conclusions of Law

### A. Standing or jurisdiction

Standing refers to a "plaintiff's ability or entitlement to maintain an action before the court." N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997) (citing New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67 (1980)). To enjoy standing the plaintiff "must have a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision." Ibid. "Standing is . . . a threshold issue. It neither depends on nor determines the merits of a plaintiff's claim . . . Standing, like jurisdiction, involves a threshold determination of the court's power to hear the case." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 417-418 (1991) (internal citations omitted). "Standing involves 'limits on the exercise of . . . jurisdiction.' A dismissal for lack of standing, like one for lack of jurisdiction amounts to a refusal by the court to resolve the matter." Id. at 418 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). However, standing is not a matter of jurisdiction, only justiciability, which does not expressly prohibit, but only warns against invoking the court's authority to act.

8

Conversely, jurisdiction involves "'the power of a court to hear and determine cases of the class to which the proceeding in question belongs. It solely rests upon the court's having been granted such power by the Constitution or by valid legislation, and cannot be vested by agreement of the parties.'" N.J. Citizen Action, 296 N.J. Super. at 411 (quoting State v. Osborn, 32 N.J. 117, 122 (1960)). Thus, if a court assumes authority over a matter that exceeds its constitutionally or statutorily conferred jurisdiction, the court's action is rendered void. McMahon v. City of Newark, 195 N.J. 526, 546-547 (2008). In sum, "the judgment of a tribunal lacking jurisdiction to enter such judgment is utterly void." Maguire v. Van Meter, 121 N.J.L. 150, 153 (E. & A. 1938).

The Tax Court "is a court of limited jurisdiction" and its jurisdiction is precisely delineated under our statutes. McMahon, 195 N.J. at 529. The Tax Court is vested with jurisdiction "to review actions or regulations with respect to a tax matter" involving "(1) [a]ny State agency or official; (2) [a] county board of taxation; (3) [a] county or municipal official." N.J.S.A. 2B:13-2(a). Additionally, the Tax Court possesses jurisdiction over "actions cognizable in the Superior Court which raise issues as to which expertise in matters involving taxation is desirable, and which have been transferred to the Tax Court" under our court rules. N.J.S.A. 2B:13-2(b). Moreover, the Tax Court is entrusted with jurisdiction "over any other matters as may be provided by statute." N.J.S.A. 2B:13-2(c).

A taxpayer or taxing district believing that it is aggrieved or discriminated against by the assessed value of a property, may on or before the later of "April 1, or 45 days from the date of the bulk mailing of notification of assessment is completed" file an appeal with the county board of taxation, or directly with the Tax Court, if the assessed value exceeds $1,000,000. N.J.S.A.

9

54:3-21(a).[14] Thus, in local property tax matters, to enjoy standing, an appeal "must be filed on behalf of an aggrieved taxpayer within the meaning of N.J.S.A. 54:3-21." Prime Accounting Dept. v. Township of Carney's Point, 212 N.J. 493, 506 (2013).

The Tax Court has "reasonably inferred that the Legislature intended 'to afford the right to appeal essentially to any person whose tax payments are adversely affected by an improper assessment and not only to an owner in fee of the assessed property appealed.'" Ewing Twp. v. Mercer Paper Tube Corp., 8 N.J. Tax 84, 91 (Tax 1985). Thus, an aggrieved taxpayer encompasses not only the fee simple property owner, but rather embraces the principle that an aggrieved taxpayer should include any person or entity whose tax payments, financial, or security interest in a property will be detrimentally impacted by the imposition of a discriminatory or inaccurate tax assessment. See Village Supermarkets, Inc. v. West Orange Twp., 6 N.J. Tax 481 (1984), rev'd, 206 N.J. Super. 597 (App. Div. 1986), aff'd as modified, 106 N.J. 628 (1987) ("the right of a tenant to prosecute an appeal in the name of the landlord may be inferred fairly from the circumstances of the parties in many but not all cases."); Ewing Twp. v. Mercer Paper Tube Corp., 8 N.J. Tax 84, 91 (Tax 1985) (an aggrieved taxpayer includes "any lessee whose lease covers the full tax year and requires him to pay the full assessment of the taxes levied"); Chemical Bank New Jersey, N.A. v. Absecon City, 13 N.J. Tax 1 (Tax 1992) (a "mortgagee, whose mortgage is in default, who has paid the real estate taxes, and who seeks to protect its security," is an aggrieved taxpayer); Lato v. Rockaway Twp., 16 N.J. Tax 355, 366 (Tax 1997) ("a tax sale certificate holder has a significant and substantial property interest equal to, and in some respects greater than, the property interest

---

[14] If a property is in a county participating in the demonstration program under N.J.S.A. 54:1-104, or a county that has adopted the provisions of N.J.S.A. 54:1-105, a taxpayer or taxing district feeling aggrieved or discriminated against by the assessed valuation may, on or before the later of January 15, or 45 days from the date the bulk mailing of the notification of assessment, file an appeal challenging the local property tax assessment. N.J.S.A. 54:3-21(a)(2).

of a mortgagee or tenant, and [] the certificate holder's interest is sufficient to create an implied right to appeal and to compel the conferring of standing to appeal."); Slater v. Holmdel Twp., 20 N.J. Tax 8, 15 (Tax 2002) (the non-owner spouse "qualifies as a [aggrieved] 'taxpayer' within the meaning of N.J.S.A. 54:3-21 based upon his possessory right to the marital residence and his potential tax liability for the same.")

Here, the assessor does not contend that plaintiff is not an aggrieved taxpayer, under N.J.S.A. 54:3-21(a). Rather, the assessor argues that plaintiff's Complaint must be dismissed, under R. 4:6-2(e), because plaintiff lacks standing under N.J.S.A. 54:3-21(b) to pursue the cause of action. However, it is undisputed that plaintiff, as the fee simple property owner, bears responsibility for the subject property's 2020 local property tax assessment and possesses an adverseness with respect to the subject matter of the litigation. In addition, it is undisputed that plaintiff's Complaint was timely, when measured under the auspices of N.J.S.A. 54:3-21(a). Moreover, should the subject property's land tax assessment remain undisturbed, plaintiff will suffer financial hardship by virtue of its liability for the alleged discriminatory or excessive local property tax assessment. Thus, the court finds that plaintiff is an aggrieved taxpayer under N.J.S.A. 54:3-21(a) and its standing to pursue the cause of action in this matter is not at issue.

Instead, with the enactment of N.J.S.A. 54:3-21(b), our Legislature sought to limit or restrict the Tax Court's jurisdiction to entertain certain challenges. Under N.J.S.A. 54:3-21(b), the Legislature expressly prohibited taxpayers and taxing districts from pursuing an appeal before the court challenging "either an assessment or an exemption or both that is based on a financial agreement subject to the provisions of the 'Long Term Tax Exemption Law' under the appeals process set forth in subsection a. of this section." N.J.S.A. 54:3-21(b).

11

Therefore, the court concludes that the assessor's argument stems from whether the 2003 amendments to the LTTEL and enactment of N.J.S.A. 54:3-21(b) were intended to deprive the Tax Court of jurisdiction over plaintiff's challenge to the subject property's land tax assessment. Accordingly, the court finds the assessor's request for relief is improperly characterized as seeking dismissal for failure to state a claim upon which relief may be granted, under R. 4:6-2(e) and is more appropriately characterized as seeking dismissal for lack of jurisdiction, under R. 4:6-2(a).[15]

**B.    The LTTEL**

1.    Legislature purpose

In 1991, our Legislature enacted the LTTEL for the purpose of eradicating "unnecessary, redundant laws that impeded the elimination of blighted areas and at the same time promote laws that 'encourage[d] private capital and participation by private enterprise.'" MEPT Journal Square Urban Renewal, LLC v. City of Jersey City, 455 N.J. Super. 608, 623 (App. Div. 2018) (quoting N.J.S.A. 40A:20-2).[16] [17]    The LTTEL sought to incentivize development and encourage the

---

[15]  The analysis under R. 4:6-2(a) and R. 4:6-2(e) require application of different legal standards. An application presented under R. 4:6-2(a), for lack of jurisdiction over the subject matter, requires the trial court to consider whether a cause of action can be maintained.  "[W]hether subject matter jurisdiction exists presents a purely legal issue" for the court.  Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012), certif. denied, 214 N.J. 175 (2013).  Conversely, an application under R. 4:6-2(e), for failure to state a claim upon which relief can be granted, invokes consideration of whether the causes of action alleged are sufficiently pled.  Under R. 4:6-2(e), the trial court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).

[16]  L. 1991, c. 431, § 20 (eff. Apr.17, 1992), which enacted the LTTEL, repealed several statutes, including the Fox-Lance Law, N.J.S.A. 40:55C-40 to -76 (the "Fox-Lance Law"), the Urban Renewal Nonprofit Corporation Law of 1965, N.J.S.A. 40:55C-77 to -108, and the Limited Dividend Nonprofit Housing Corporations or Associations Law, N.J.S.A. 55:16-1 to -22.

[17]  In 1992, following enactment of the Local Development and Housing Law, the LTTEL was amended by L. 1992, c. 79, § 54, "to include the Legislature's declaration that the provisions of [the LTTEL] were to be construed in conjunction with the Local Redevelopment and Housing Law."  Millennium Towers Urban Renewal Ltd. Liability Co. v. Municipal Council of City of Jersey City, 343 N.J. Super. 367, 380 (Law Div. 2001) (citing  N.J.S.A. 40A:20-2).

12

investment of "private capital" in projects designed to restore deteriorated or neglected neighborhoods. See N.J.S.A. 40A:20-2. In exchange for qualifying redevelopment and rehabilitation projects, the LTTEL affords municipalities the ability to grant local property tax exemptions to private entities. The LTTEL states, in pertinent part, that:

> [t]he Legislature declares that the provisions of this act are one means of accomplishing the redevelopment and rehabilitation purposes of the 'Local Redevelopment and Housing Law,' P.L. 1992, c. 79 through the use of private entities and financial arrangements pertaining thereto, and that this act should be construed in conjunction with that act.
>
> [N.J.S.A. 40A:20-2.]

However, the parameters for approving a project's application for a long-term tax exemption and the terms of a financial agreement between a municipality and a private entity are narrowly tailored. A municipality must have first adopted a redevelopment plan. See N.J.S.A. 40A:20-4. The application for a long-term tax exemption must include a "statement of the nature of the proposed project," "a description of the proposed project outlining the area included," "a statement . . . of the estimated cost of the proposed project . . . , including the estimated cost of each unit," it must detail the "source, method and amount of money to be subscribed through the investment of private capital," and identify the projected "schedule of annual gross revenue, the estimated expenditures for operation and maintenance, payments for interest, amortization of debt and reserves, and payments to the municipality to be made pursuant to a financial agreement." N.J.S.A. 40A:20-8.

Once the municipal governing body has adopted a resolution approving the exemption application, a financial agreement must be prepared detailing the terms of the agreement and forwarded to the municipal governing body for final approval. The financial agreement constitutes a contract between the urban renewal entity and the municipality and must contain those provisions

13

more particularly enumerated under N.J.S.A. 40A:20-9.  However, the financial agreement shall require "full performance within 30 years from the date of completion of the project." N.J.S.A. 40A:20-9.

In consideration for the grant of an exemption under the LTTEL, the urban renewal entity is required to make payments to the municipality "in lieu of any taxes to be paid on the buildings and improvements of the project . . . of an annual service charge."  N.J.S.A. 40A:20-12(b).  The annual service charge to be paid is set forth under the financial agreement and determined in accordance with N.J.S.A. 40A:20-11 and 40A:20-12(b)(1).  However, the LTTEL permits the urban renewal entity to receive a credit "[a]gainst the annual service charge . . . for the amount, without interest, of the real estate taxes on land paid by it in the last four preceding quarterly installments."  N.J.S.A. 40A:20-12.

2.    The Secaucus decision

In 1998 and 1999, the Town of Secaucus filed tax appeals challenging the long-term tax exemption granted by the City of Jersey City to an urban renewal entity for a project initially approved under the Fox-Lance Law and continued under the LTTEL.[18]  Town of Secaucus v. City of Jersey City, 20 N.J. Tax 384 (2002 Tax).  Secaucus raised several arguments why the project and financial agreement failed to comply with the Fox-Lance Law and LTTEL, and, therefore, did not properly qualify for exemption.  In addition to other defenses raised, the City of Jersey City

---

[18]  To ensure continuity between the terms and provisions of the Fox-Lance Law and the LTTEL, N.J.S.A. 40A:20-19, provides that "[w]henever in any law, the term 'urban renewal corporation', 'urban renewal association,' 'nonprofit urban renewal corporation,' 'limited dividend housing corporation,' 'limited dividend housing association,' 'nonprofit housing corporation,' 'senior citizen nonprofit housing corporation,' or similar entity for which the authorizing statute is repealed by this act, appears, that term shall be deemed to refer to an 'urban renewal entity' established under [the LTTEL], and the law in which the term occurs shall be construed with respect to, and in a manner consistent with, this act."

14

contended that Secaucus' tax appeals were time barred under the doctrine of laches and estoppel, having been filed approximately nine years after the grant of the exemption.

In interpreting the Fox-Lance Law and LTTEL, the court concluded that challenges lodged against the grant of a long-term tax exemption under the Fox-Lance Law and LTTEL "'shall be claimed and allowed in the same or similar manner as in the case of other real property exemptions,'" including those exemptions granted under N.J.S.A. 54:4-3.6. Id. at 418. The court stated, in part:

> the time limit for plaintiff to file its appeals was April 1 of each pretax year as set forth in N.J.S.A. 54:3-21 and not the forty-five day period for actions in lieu of prerogative writs contained in R. 4:69-6(a).
>
> [Ibid. (internal citation omitted).]

The court reasoned that Secaucus represented "the interests of all Hudson County taxpayers except those in Jersey City. The claims asserted by [Secaucus] directly affect the interests of the non-Jersey City taxpayers. Therefore, this action and the related actions . . . involve matters of public interest and importance." Id. at 421 (footnote omitted).

### 3.    Amendments to LTTEL

The court's decision in Town of Secaucus created consternation and unease with our Legislature, resulting in the introduction of two bills seeking to amend the LTTEL and N.J.S.A. 54:3-21. A. 3404, introduced in the New Jersey Assembly on March 3, 2003, and S. 2402, introduced in the New Jersey Senate on March 10, 2003, were the bills aimed at addressing those concerns. The Sponsor's Statements to A. 3404 and S. 2402 each state, in part, that:

> [t]his bill makes a series of procedural and substantive amendments to the [LTTEL] and the Local Redevelopment and Housing Law. These changes respond to . . . substantive issues raised in a series of recent court decisions. These decisions threaten to undo the longstanding practices of municipalities in negotiating and granting

long term tax exemptions and seriously undermine the vital public purpose served by these redevelopment laws.

[Sponsor's Statement to A. 3404, 22 (March 3, 2003); Sponsor's Statement to S. 2402, 22 (March 10, 2003).]

The bills incorporated a series of modifications and amendments to the LTTEL, including permitting "a limited tax exemption for the value of land in the case of developments which are exclusively housing developments in order to promote the appropriate development of affordable housing in the State." Senate Economic Growth, Agriculture and Tourism Committee Statement to S. 2402, 1 (March 17, 2003).[19] The bills also established "new criterion which should be considered by municipalities in designating redevelopment areas." Assembly Commerce and Economic Development Committee Statement to A. 3404, 1 (May 19, 2003). Most notably, the bills limited the time that a legal challenge to the validity of a financial agreement and the grant of a local property tax exemption under the LTTEL could be asserted.

The amendments to the LTTEL were enacted by L. 2003, c. 125 (eff. July 9, 2003). With the enactment of the amendments, jurisdiction over any challenges to long-term tax exemptions granted under the LTTEL were transferred from the Tax Court to the Superior Court. This change was accomplished by making two changes in the statutory language. First, by limiting the scope of any challenge to an action in lieu of prerogative writs, which, under R. 4:69-1, are cognizable in the Superior Court, Law Division. As amended, the LTTEL provides that:

the validity of a financial agreement or any exemption granted pursuant thereto may be challenged only by filing an action in lieu of prerogative writ within 20 days from the publication of a notice of the adoption of an ordinance by the governing body granting the

---

[19] The LTTEL afforded municipalities the ability to grant a limited local property tax exemption for land, provided that the land was used for housing. As amended, N.J.S.A. 40A:20-12 provides, that "when housing is to be constructed, acquired or rehabilitated by an urban renewal entity, the land upon which that housing is situated shall be exempt from taxation for a limited period as hereinafter provided." N.J.S.A. 40A:20-12.

16

exemption and approving the financial agreement. Such notice shall be published in a newspaper of general circulation in the municipality and in a newspaper of general circulation in the county if different from the municipal newspaper.

[N.J.S.A. 40A:20-12.]

The second, decoupled the right of taxpayers and taxing districts to institute an action challenging the grant of an exemption under the LTTEL from other local property tax appeal matters. A taxpayer's and taxing district's right to pursue a local property tax appeal under N.J.S.A. 54:3-21(a) was expressly limited by the Legislature under new subsection (b). As enacted, N.J.S.A. 54:3-21(b) provides that:

[n]o taxpayer or taxing district shall be entitled to appeal either an assessment or an exemption or both that is based on a financial agreement subject to the provisions of the 'Long Term Tax Exemption Law' under the appeals process set forth in subsection a. of this section.

[N.J.S.A. 54:3-21(b).]

C.    Statutory interpretation

Here, disposition of the assessor's argument centers on the court's interpretation of N.J.S.A. 54:3-21(b). In essence, the assessor contends that N.J.S.A. 54:3-21(b) should be read broadly as prohibiting all challenges involving a property that is subject to a financial agreement and exemption under the LTTEL, to actions in lieu of prerogative writs, cognizable in the Superior Court, Law Division. The assessor argues that N.J.S.A. 54:3-21(b) bars all actions before the Tax Court where a property is part of a project subject to the LTTEL. Conversely, plaintiff and defendant argue that N.J.S.A. 54:3-21(b) is intended to foreclose challenges before the Tax Court that involve assessments levied on, or exemptions afforded to, improvements that are subject to a financial agreement and part of a redevelopment project under the LTTEL. Plaintiff emphasizes

17

that its challenge involves a tax assessment levied on "non-exempt" land and, therefore, is not subject to the financial agreement or LTTEL. Rather, the land assessment is annually determined by the assessor in accordance with the constitutional and statutory mandates of N.J.S.A. 54:4-23.

The rules of statutory construction require "consideration of [a statute's] plain language." Merin v. Maglaki, 126 N.J. 430, 435 (1992). See also Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128 (1987); In re Plan for the Abolition of Council on Affordable Hous., 214 N.J. 444, 467-68 (2013). If based upon a plain reading that the statutory language is "clear and unambiguous," then the court must "implement the statute as written without resort to judicial interpretation, rules of construction, or extrinsic matters." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202 (1999) (quoting In re Estate of Post, 282 N.J. Super. 59, 72 (App. Div. 1995)).

Similarly, in the taxation arena, when faced with an issue of statutory construction, the preferred "approach to [interpreting] the meaning of a tax statute is to give to the words used by the Legislature 'their generally accepted meaning, unless another or different meaning is expressly indicated.'" Public Service Electric & Gas Co. v. Woodbridge Twp., 73 N.J. 474, 478 (1977) (quoting New Jersey Power & Light Co. v. Denville Twp., 80 N.J. Super. 435, 440 (App. Div. 1963)).

However, if the "plain language of a statute creates uncertainties or ambiguities, a reviewing court must examine the legislative intent underlying the statute and 'construe the statute in a way that will best effectuate that intent.'" Musikoff v. Jay Parrino's the Mint, L.L.C., 172 N.J. 133, 136 (2002) (quoting New Jersey State League of Municipalities v. Department of Community Affairs, 158 N.J. 211, 224 (1999)). In matters of statutory interpretation, the court bears the burden of effectuating "the 'fundamental purpose for which the legislation was enacted.'" Pennsauken Twp. v. Schad, 160 N.J. 156, 170 (1999).

The court finds that no ambiguity or vagueness exists under the plain language of N.J.S.A. 54:3-21(b). Thus, the court does not need to resort to extrinsic evidence to gauge the Legislature's intent. In crafting N.J.S.A. 54:3-21(b), our Legislature prohibited a taxpayer or taxing district from challenging "either an assessment or an exemption . . . that is based on a financial agreement subject to the provisions of the 'Long Term Tax Exemption Law.'" N.J.S.A. 54:3-21(b). Accordingly, the court's review of the statutory language reveals that the prohibition applies only to actions seeking to challenge an assessment or exemption that is based on a financial agreement under the LTTEL. If the court's review of the financial agreement discloses that the subject property's land is not exempt from tax, and the subject property's land assessment was not determined in accordance with the financial agreement, the prohibition under N.J.S.A. 54:3-21(b) is inapplicable to this matter.

Here, the court's review of the First Amended Financial Agreement evinces that the subject property's land does not qualify for exemption under the LTTEL, as it does not involve a housing project under N.J.S.A. 40A:20-12. Moreover, the First Amended Financial Agreement clearly delineates that the subject property's land tax assessment is not based on the financial agreement, but rather will be determined by the assessor. Specifically, section 1.02 of the First Amended Financial Agreement defines the term "Land Taxes" as "[p]ayments made on the quarterly due dates for Land Taxes as determined by the Tax Assessor and the Tax Collector." Moreover, under section 4.05(a) of the First Amended Financial Agreement, the urban renewal entity "expressly acknowledges, understands and agrees that the tax exemption provided for herein shall apply to the Improvements and that Land Taxes shall be separately assessed by the Township in accordance with Applicable Law."

19

Additionally, under section 2.01 of the First Amended Financial Agreement, plaintiff and defendant agree that "the Improvements to be constructed and maintained by [plaintiff] on the Redevelopment Area shall be exempt from taxation as provided for herein and in the [LTTEL]." The term "Improvements" is narrowly defined as "[t]he construction of approximately 1 million Rentable Square Feet of warehouse and light industrial space, tenant improvements, and all on-site and off-site infrastructure required therefor." Thus, it is the subject property's "Improvements" that are bound by the terms of the First Amended Financial Agreement. The subject property's land tax assessment is not based on, nor determined under the First Amended Financial Agreement or LTTEL.

Moreover, even if the First Amended Financial Agreement could be interpreted as fixing the subject property's land tax assessment or limiting the assessor's ability to independently determine the land tax assessment, for substantially the same reasons expressed by the court in New Jersey MetroMall Urban Renewal, Inc. v. City of Elizabeth, the court finds that such provisions would be rendered void and invalid. 22 N.J. Tax 276, 290 (Tax 2003) (concluding that if a financial agreement attempts "to deviate from the mandates of the [LTTEL], the relevant provisions would be invalid. 'A contract provision that is contrary to the requirements of a statute is void.'" (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 629 (App. Div. 1998)).

In New Jersey MetroMall Urban Renewal, the urban renewal entity challenged a property's land tax assessment, arguing that it violated the terms of the financial agreement between the urban renewal entity and the taxing district. The taxing district granted the project and its improvements an exemption under the LTTEL, permitting the urban renewal entity to make annual service charge payments. 22 N.J. Tax at 281. The financial agreement between the parties provided that the property's land would be treated as "unimproved and unimprovable" for valuation purposes. The

20

urban renewal entity contended that the taxing district violated the financial agreement when the subject property's land was assessed significantly higher than prior tax years assessments. Id. at 283. The taxing district argued that the financial agreement did not freeze the property's land tax assessment and that any alleged freeze would not only violate the LTTEL, but the Uniformity Clause under the New Jersey Constitution.

In rejecting the urban renewal entity's argument, the court found that the "Uniformity Clause prohibits any freezing of, or limitation on, the land assessment on the subject land. Even if the [LTTEL] permitted an agreement to freeze a tax assessment . . . , the applicable provisions off [sic] the [LTTEL] would be invalid as violative of the Uniformity Clause." Id. at 295. Importantly, the court concluded that no property tax exemption for land is authorized under the LTTEL, "except to the extent permitted [for housing projects under N.J.S.A. 40A:20-12], and require[s] that land included in a 'project'. . . be assessed on the same basis as all other land in the municipality." Id. at 290 (emphasis added).

Accordingly, the court finds a lack of support for the assessor's contention that N.J.S.A. 54:3-21(b) should be read so broadly as to preclude all actions before the Tax Court involving a property that is part of a redevelopment project subject to a financial agreement under the LTTEL. Instead, the court views the plain language of N.J.S.A. 54:3-21(b), and the Legislature's statements in enacting N.J.S.A. 54:3-21(b),[20] as prohibiting challenges before the Tax Court involving the

---

[20] In enacting N.J.S.A. 54:3-21(b), the Senate Economic Growth, Agriculture and Tourism Committee Statement to S. 2402, provided, in part, that: "[t]hese tax exemptions are declared to represent long term financial agreements between the municipality and the urban renewal entity and thereby constitute a single continuing exemption from local property taxation for the duration of the financial agreement, under the bill. The validity of a financial agreement or any exemption granted pursuant thereto may be challenged only by filing an action in lieu of prerogative writ within 20 days from the publication of a notice of the adoption of an ordinance by the governing body granting the exemption and approving the financial agreement." Senate Economic Growth, Agriculture and Tourism Committee Statement to S. 2402, 2 (March 17, 2003) (emphasis added).

21

terms of a financial agreement or an exemption granted under the LTTEL.  The court finds that the Legislature intended those challenges to be filed as actions in lieu of prerogative writs, thereby vesting exclusive jurisdiction with the Superior Court, Law Division.  However, the court does not find that N.J.S.A. 54:3-21(b) was intended to or should operate to preclude a taxpayer or taxing district from instituting a timely challenge to a local property tax assessment on land that is not subject to a financial agreement, or an exemption, under the LTTEL.  Here, the subject property's land tax assessment was determined in accordance with N.J.S.A. 54:4-23, independent of the financial agreement and LTTEL, and thus is not precluded under N.J.S.A. 54:3-21(b).

### III.  **Conclusion**

For the above stated reasons, the court concludes that the Tax Court possesses jurisdiction under N.J.S.A. 54:3-21 to adjudicate plaintiff's Complaint, and plaintiff possesses standing to bring this action.

However, the court makes no finding regarding the proposed settlement and Stipulation of Settlement filed in this matter.[21]  The court will schedule this matter for further proceedings to address the assessor's contention that the proposed reduction in the subject property's land assessment to $2,660,000, was unsupported by independent valuation evidence and was based on defendant's financial consultant's revenue projections under the First Amended Financial Agreement.

---

[21]  See Clinton Twp. Citizens Comm., 185 N.J. Super. at 352 (concluding that "the authority to withdraw or settle litigation . . . lies in the governing body and not . . . , in the tax assessor.  Of course, actions taken in the context of litigation by a municipal tax assessor or by a municipal attorney may be ratified subsequently by the governing body in appropriate circumstances.  Nonetheless, for good reason, the elected representatives of a taxing district who constitute its governing body have the ultimate legal authority over the control of litigation.")

22